IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

SUNBEAM PRODUCTS, INC.,

    Plaintiff,

v.                                    Civil Action No. 3:09cv791

HAMILTON BEACH BRANDS,
INC., et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant Homeland Housewares, LLC's MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT (Docket No. 52). For the reasons set forth below, the MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT (Docket No. 52) will be denied.

## BACKGROUND

On December 23, 2009,[1] the Plaintiff, Sunbeam Products, Inc. ("Sunbeam") filed this action against the Defendants, Hamilton Beach Brands, Inc. ("Hamilton Beach"), Homeland Housewares, LLC

---

[1] The record neither supports nor refutes the Defendants' assertion that the Complaint was "strategically" timed "to ruin their holidays." Reply at 19.

1

("Homeland"), Alchemy Worldwide, LLC ("Alchemy"),[2] and Back to Basics Products, LLC ("Back to Basics") alleging infringement of United States Patent Nos. 6,758,592 (the "'592 Patent") and 7,520,659 (the "'659 Patent") (collectively the "Patents-in-Suit"). Compl. ¶¶ 10, 12. The Patents-in-Suit relate to vessels attached to blending bases whereby blended contents may be consumed, with the aid of a "drinking cap," directly from the vessel after blending. The specifications of the '592 and '659 patents are "identical." Pl. Markman Brief at 1 n.4.

Sunbeam applied for the '592 patent in 2003, as a division of a patent originally sought in 2001; the '592 patent issued on July 6, 2004. Pl. Markman Exh. 1, at 1. On January 24, 2005, Sunbeam sent a cease-and-desist letter to Defendant Back to Basics alleging infringement of the '592 patent and demanding an end to such infringing use. Back to Basics responded that, for several reasons (including prior art, obviousness, and inequitable conduct), it did not believe the '592 patent to be valid or enforceable. Pl. Oppo. Exh. 1. Sunbeam sent a similar letter to Homeland, maker of the Magic Bullet®, in June 2005; Homeland does not appear to have responded to this letter. Def. Memo. at 3-4. Much like Back to Basics, Homeland concluded that

---

[2] The alleged infringement of Alchemy and Homeland are both based upon their production and/or marketing of the "Magic Bullet®" product.

the cease-and-desist letter was unwarranted because Homeland did not believe the '592 patent was valid or enforceable.

"While Sunbeam did not agree," unsurprisingly (Pl. Oppo. at 8), that the '592 patent was invalid or unenforceable, it did send the letter it received from Back to Basics to the patent office, along with some prior art and other documentation, in its prosecution of the '659 patent. The '659 patent application was filed on January 24, 2007, and the patent issued on April 21, 2009. Some of the claims Sunbeam sought to assert in the '659 patent were rejected, based on prior art, before the '659 patent was issued. As noted above, this action was filed eight months after the '659 patent issued.

On April 5, 2010, according to the briefing schedule established at the Initial Pretrial Conference held on March 22, 2010, Defendant Homeland filed this motion to stay. Homeland requests that the Court stay the extant litigation pending the outcome of its requests for inter partes reexamination of both the '592 patent and the '659 patent, filed March 12, 2010. The Patent Office has not yet granted Homeland's request to reexamine the patents, although the Patent Office must decide whether to grant Homeland's request by June 14, 2010.

According to statistics cited by Homeland and not disputed by Sunbeam, 96% of inter partes reexamination requests are

3

granted, and 92% of these requests result in the invalidation or amendment of the reexamined claims. However, the reexamination process is extraordinarily slow, typically taking over six years to run its full course. Pl. Oppo. at 6 (citing ePlus, Inc. v. Lawson Software, Inc., No. 3:09cv620, 2010 WL 1279092, at *3 (E.D. Va. Mar. 31, 2010)).

## DISCUSSION

### A.   The Legal Standard

The power to stay proceedings is incidental to a court's inherent power to control its own docket. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). In exercising its authority to grant a stay, a court is given wide discretion to "weigh competing interests and maintain an even balance." Id. at 255; see also Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183-84 (1952). The Federal Circuit, in applying Landis, described this balance:

> In deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay. The court must then balance interests favoring a stay against interests frustrated by the action. Overarching this balance is the court's paramount obligation to exercise jurisdiction timely in cases properly before it.

Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

In patent cases, courts have found the following factors particularly relevant to consideration of a stay:

> (1) whether discovery is complete and a trial date is scheduled;
>
> (2) whether a stay would simplify the matters at issue;
>
> (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party.

NTP, Inc. v. T-Mobile, USA, Inc., 2007 WL 3254796, at *2 (E.D. Va. Nov. 2, 2007) (citing NTP, Inc. v. Palm, Inc., No. 3:06-CV-836 (E.D. Va. Mar. 22, 2007)). Ultimately, the party seeking a stay must make out a "clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255. If hardship or inequity cannot be shown, a stay is not merited. Aventis Pharma Deutschland GMBH v. Lupin Ltd., 403 F. Supp. 2d 484, 489 (E.D. Va. 2005).

B. Factors Relevant to a Stay

1. Discovery and Trial Date

Although this proceeding is in its relatively early stages, August 6, 2010 (three months from now) has been established as the discovery completion date. According to Sunbeam, the parties have already "issued hundreds of discovery requests and objections," in addition to exchanging disputed claim terms,

5

Rule 26 disclosures, and contentions respecting infringement and invalidity. Pl. Oppo. at 4-5.

Thus, viewing the issue from the perspective of the *percentage* of discovery that has been completed, the parties remain at a relatively early stage of the discovery. However, with a view towards the overall amount of time left in discovery, not many months remain until discovery will be complete. "Judicial efficiency," a central concern when considering a motion to stay, "has a temporal component and 'mandates that the matter be decided at the earliest possible time.'" Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474 (S.D.N.Y. 2007) (citations omitted). And, as explained in Sighting System Instruments, LLC v. Prestige Law Enforcement, Inc., No. 3:05-CV-1560-G, 2006 WL 2642184 (N.D. Tex. September 11, 2006):

> Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference -- that a suit in the early stages should weigh heavily in favor of a stay -- is not true. As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.

Moreover, the case is set for trial in January 2011. By comparison, the reexamination process, if it is a typical one, would not conclude for another six years. Thus, although Sunbeam somewhat overstates the progress that has been made to date in the case -- indeed, the parties have accomplished much less than would ordinarily be expected in the nearly six months since the original complaint was filed -- the inordinate delay that a stay would impose upon all parties cautions the Court, in considering the first factor, against granting a stay.

2. **Simplifying the Matters at Issue**

Homeland focuses primarily on the merits of Sunbeam's claims, asserting that "its position on invalidity is extremely strong and will result in invalidation of all of the claims in the patents-in-suit" during reexamination. Def. Memo. at 6. This would not merely simplify the matters at issue, but would eliminate the need for the Court to consider these matters at all. However, as Sunbeam notes, the Patent Office has considered the validity of much of the material at issue quite recently, having issued the '692 patent just over a year ago. Although Homeland takes issue with what, precisely, the Patent Office examined before issuing the '692 patent, Homeland cannot deny the considerable overlap between those issues and the issues disputed in this litigation.

It is little more than a tautology to state that reexamination will simplify the matters at issue. That will be true in any case, because the Patent Office's expertise as provided during reexamination will always inform the underlying issues that the Court would consider after the reexamination process was complete. However, given the Patent Office's recent examination of the subject, it appears less likely than in other cases that a reexamination would significantly simplify the underlying issues.

### 3. Prejudice to Sunbeam

A trial court abuses its discretion when it grants a stay of "indefinite duration in the absence of a pressing need." <u>Cherokee Nation</u>, 124 F.3d at 1416 (citing <u>Landis</u>, 299 U.S. at 255). Although a process that typically takes six years may not be "indefinite," it is long enough to work considerable prejudice upon the non-moving party.

In this case, the time table is even less definite than usual, as the reexamination request has not yet been granted. Although the filing of a motion to stay before the Patent Office decides whether to grant a reexamination request does not, as Sunbeam contends, render it premature as a matter of law, <u>see</u> <u>Heinz Kettler GMBH & Co., KG v. Indian Indus.</u>, 592 F. Supp. 2d 880, 882 n.5 (E.D. Va. 2009) (recognizing "that a few courts

have concluded that a stay is appropriate in view of a *pending reexamination request*" but nonetheless declining to impose a stay), it does affect the balancing of interests among the parties.[3] And here, it works a greater prejudice on Sunbeam, who, if a stay were granted, would suffer a particularly long wait, in a scenario in which the Patent Office's recent review of the art at issue in prosecution of the '659 patent provides an objective indicator that the Patents-In-Suit are less likely to be enhanced or invalidated than in a typical case.

Sunbeam also argues that it is prejudiced by a stay because it is a direct competitor of the Defendants. See Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant.") On the other hand, Homeland asserts that Sunbeam is not prejudiced even if the action is stayed, because Sunbeam, if it is entitled to recover at all, will be able to recover damages for any infringement that occurs during the reexamination proceedings. See T-Mobile, 2007 WL 3254796, at *3 ("By filing these suits, [the plaintiff] is eligible to recover damages for any infringement of the patents-

---

[3] Sunbeam also contends that "Homeland ignores its long delay in filing its reexam petitions." Pl. Oppo. at 3. However, the length and complexity of Homeland's petitions for reexamination, and the unanticipated nature of this lawsuit, filed on December 23, 2009, indicate that Homeland did not delay in filing its reexamination petitions.

at-issue that occurs while re-examination is proceeding (provided that the PTO [] and the Federal Circuit . . . conclude that any of the patents-at-issue are valid).").  Thus, though Sunbeam could lose market share and profits while awaiting completion of the reexamination, it would be able to recover damages for that period if the Patents-in-Suit are valid and infringed.

Both parties also take some different angles on the issue of direct competition.  Sunbeam asserts that competition is all the more important to consider because "not only are Sunbeam and Homeland direct competitors, they are two of the largest competitors in the blender industry."  Pl. Oppo. at 10.  Furthermore, Sunbeam alleges that, if injunctive relief is delayed during the stay, "it will suffer irreparable harm to its reputation and good will, as Homeland may have usurped this product segment market and irreparably damaged Sunbeam's reputation as an industry leader."  Id.

Homeland, on the other hand, asserts that "Sunbeam does not appear to market and sell a single product similar to Homeland's Magic Bullet® product."  Homeland is "only aware of one product marked with either of the number of the patents-in-suit," and that product, unlike the Magic Bullet®, is "sold without a blender base," and is thus not an interchangeable alternative.

Homeland further notes that "the patents-in-suit will not expire until approximately 2021 at the earliest," negating the frequently raised argument that a stay will prevent the plaintiff from obtaining injunctive relief before the patents expire.

While Homeland raises some valid points that indicate the hardship to Sunbeam may be less than in some other patent cases, Sunbeam has still demonstrated it would be prejudiced by a stay. Both the time that Sunbeam would have to wait to litigate its claims, and the possibility that it could lose market share -- potentially permanently -- during the stay, weigh against staying the litigation.

4. **Hardship to Homeland**

Homeland presents two arguments in asserting that it will suffer hardship in going forward. First, it offers statistics that to conduct patent litigation to completion is almost twelve times as expensive as inter partes reexamination through appeal to the Federal Circuit. Def. Memo. at 19. However, even accepting the statistics as Homeland presents them,[4] "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of

---

[4] The statistics indicate that, if the litigation is resolved at the end of discovery, as opposed to proceeding to trial, the overall cost is reduced by approximately 40 percent.

11

*Landis*." Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005). The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.

Second, as noted above, but as also asserted in the context of prejudice to the Defendants, Homeland spends much of its brief arguing the merits of the validity of the Patents-In-Suit. In essence, Homeland suggests that, because the patents will likely be invalidated, its hardship will be particularly galling because it is defending against a meritless suit. The merits of a patent are best considered in claim construction and summary judgment. Indeed, if the merits are as clear as Homeland asserts them to be, a stay would not be in Homeland's interest, nor in the interest of judicial efficiency, because the Court could resolve all of the issues quickly and easily during either claim construction or summary judgment, without requiring the litigants to wait six more years for the reexamination process to run its course.

C.  **Balance of Interests**

Homeland has not met its burden of showing hardship in being required to go forward with this action. And on balance, the interests here do not favor a stay. Certainly, there are reasons which support the grant of a stay. It is possible that

reexamination could result in the cancellation or amendment of some of the claims at issue. And, staying an action until reexamination could provide the Court with the benefit of further expertise of the Patent Office as brought to bear upon the reexamination.

However, in this case, numerous considerations outweigh those benefits. Discovery is well underway. The Markman process has kicked off, with opening and response briefs already filed. Moreover, the inter partes reexamination procedure has not yet begun, and shows no likelihood of getting underway -- assuming Homeland's reexamination request is even granted -- before claim construction is likely to occur. And, it appears that reexamination would provide less benefit than in other cases because the Patent Office has considered the issues so recently. Finally, staying the action for six years or more, until reexamination of the Patents-in-Suit is complete, would subject Sunbeam not only to profit loss during the pendency stay, but also the prospect of losing significant market share during the stay that would lead to profit loss into the indefinite future.

Therefore, on balance, the interests favoring a stay are outweighed by the interests of the parties and the efficient administration of justice in moving forward with the action.

## CONCLUSION

For the foregoing reasons, the MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT (Docket No. 52) will be denied.

It is so ORDERED.

```
                    /s/            REP
        Robert E. Payne
        Senior United States District Judge
```

Richmond, Virginia
Date: May 7, 2010