IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS,<br><br>        Plaintiff,<br><br>v.<br><br>HAMILTON BEACH BRANDS, INC., HOMELAND HOUSEWARES, LLC, ALCHEMY WORLDWIDE LLC, ALCHEMY WORLDWIDE INC., AND BACK TO BASICS PRODUCTS, LLC,<br><br>        Defendants. | Civil Action No. 3:09-CV-00791 REP<br><br>JURY TRIAL DEMANDED |

## SUNBEAM'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISQUALIFY DANIEL CISLO AND CISLO & THOMAS

Sunbeam respectfully submits this brief in support of its motion to disqualify Daniel Cislo and Cislo & Thomas LLP ("Cislo & Thomas") as counsel for Homeland Housewares, LLC ("Homeland") in this action. More specifically, lead counsel Daniel Cislo ("Cislo") and others from his firm should be disqualified because they are material witnesses on the issue of Homeland's willful infringement of U.S. Patent No. 6,758,592 ("the '592 patent") and U.S. Patent No. 7,520,659 ("the '659 patent"). Homeland claims that Cislo and his colleagues at Cislo & Thomas provided an oral opinion in 2005 that the '592 patent is invalid and/or that Homeland's Magic Bullet and other products do not infringe this patent. Homeland, as stated in its written responses to interrogatories, will rely on this opinion of counsel at trial to prove that its infringement of the patents-in-suit was not willful, making Cislo and others at his firm

material witnesses here.

The circumstances of this case are very similar to the circumstances in a case previously before this court. *See Personalized Mass Media Corp. v. The Weather Channel, Inc.*, 899 F. Supp. 239 (E.D. Va. 1995) (Payne, J.). As in that case, Daniel Cislo (there Thomas J. Scott) is a partner in a firm and Homeland Houseware's patent counsel. As in that case, he advised Homeland Housewares about all aspects of the company's patent positions for many years. As in that case, he is an expert on all aspects of the company's patent positions, including its defensive position against Sunbeam. He and colleagues at his firm provided an oral non-infringement opinion that Homeland will rely on. As in that case, he will be a material witness at trial. Like counsel in *Personalized Mass Media Corp.*, Cislo and Homeland knew of the possibility of disqualification from the outset and should have expected a challenge to the participation of Cislo and the law firm in any litigation alleging infringement by Sunbeam. *Id.* at 244-45. Thus, Homeland cannot be heard to claim hardship now that this foreseeable conflict has matured into reality. *See, e.g., Summagraphics Corp. v. Sanders Assocs., Inc.,* 19 U.S.P.Q.2d (BNA) 1859, 1991 WL 322234, *3 (D. Conn. 1991).

**FACTUAL BACKGROUND**

Daniel Cislo and his colleagues at Cislo & Thomas have knowledge of facts that will be critical to the jury's assessment as to whether Homeland's infringement of the '592 patent and the '659 patent was willful. Their testimony before the jury will either help or hurt Homeland's position, but either way, they are material witnesses.

On June 3, 2005, Larry Shurupoff, Intellectual Property Counsel for Sunbeam, wrote to Homeland stating: "It has recently come to our attention that Homeland is marketing a blender along with a cup and lid identified as 'Magic Bullet'… This blender with cup and lid has features

that appear to be covered by United State Patent No. 6,758,592 assigned to Sunbeam Products, Inc.  In order to timely resolve this matter, please contact me no later than June 17, 2005." *See* June 3, 2005 letter from Larry Shurupoff to Lenny Sands, attached to Gennari Decl., Ex. A. Daniel Cislo and his colleagues at Cislo & Thomas "looked into" the allegations in Sunbeam's letter and concluded that the claims of the '592 patent were invalid and/or the Magic Bullet did not infringe the '592 patent.  *See* April 1, 2010 Declaration of Daniel Cislo in Support of Homeland's Brief in Support of Motion to Stay ¶¶ 1, 3.[1]

Sunbeam filed this action on December 15, 2009, alleging, among other things, that Homeland has willfully infringed the two patents.  On March 25, 2010, Sunbeam served its first set of interrogatories on Homeland.  After receiving an extension, Homeland responded on April 30, 2010.  *See* Homeland's Responses to Sunbeam's First Set of Interrogatories ("Homeland's Interrogatory Responses"), attached to Gennari Decl., Ex. B.  Sunbeam asked Homeland to identify how it first became aware of the patents-in-suit and how it became aware of any allegation that it infringed the patents-in-suit.  Homeland replied that it "first learned of the '592 patent and Sunbeam's allegations of potential infringement via a letter sent by Sunbeam to Homeland in June of 2005… Homeland referred Sunbeam's letter to its patent counsel for review."  Homeland's Interrogatory Responses, at 9.  Sunbeam also asked Homeland to state the basis for its contention that infringement of the patents-in-suit has not been willful.  Homeland replied that it "will rely upon on oral opinion of counsel of likely non-infringement of the

---

[1] Mr. Cislo's declaration states: "I make this declaration of my own personal knowledge or on information and belief where so stated.  If called as a witness, I could and would competently testify to the truth of the matters asserted herein….. In or about June of 2005, we learned that Sunbeam had sent a cease and desist letter to Homeland claiming that Homeland's Magic Bullet® product infringed one or more claims of the Sunbeam's U.S. Patent 6,758,592. We looked into the contentions and believed that the patent claims were likely to be held invalid by a court of law and/or the Magic Bullet® products did not infringe any valid claims of the patent."

patents-in-suit. Homeland's Interrogatory Responses, at 12. The opinion was provided to Homeland shortly after receipt of Sunbeam's letter of June of 2005 in which Sunbeam first made its allegations of potential infringement known to Homeland." Homeland's Interrogatory Responses, at 12.

In light of the assertions in Mr. Cislo's declaration and Homeland's recent interrogatory responses, there is no question that the testimony of Daniel Cislo and others at his firm will be critical to the jury's determination as to whether Homeland's infringement of the '592 and the '659 patents was "objectively reckless," *i.e.* willful. *See In re Seagate Tech., LLC,* 497 F.3d 1360, 1369 (Fed. Cir. 2007) ("Although an infringer's reliance on favorable advice of counsel, or conversely his failure to proffer any favorable advice, is not dispositive of the willfulness inquiry, it is crucial to the analysis.") (citing *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.,* 34 F.3d 1048, 1056 (Fed. Cir. 1994)).

**ARGUMENT**

Homeland will rely on an opinion from lawyers at Cislo & Thomas to argue that its infringement of the '592 and '659 patents was not willful. If Cislo & Thomas is not disqualified, Homeland's lead trial counsel, Daniel Cislo, and possibly other lawyers at Cislo, will serve as a material fact witness on behalf of Homeland. This is precisely the situation that is prohibited by the Virginia ethical rules. *See Personalized Mass Media Corp.*, 899 F. Supp. at 242; *see also Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir. 1981) ("The roles of witness and advocate are fundamentally inconsistent and when ... a lawyer ought to testify as a witness for his client, ***he must as a rule withdraw from advocacy***.") (emphasis added).

Under Local Rule 7(I), the Virginia Code of Professional Responsibility ("VCPR") sets

"[t]he ethical standards relating to the practice of law in this court." The VCPR consists of Canons, Disciplinary Rules ("DRs") and Ethical Considerations ("ECs"). Canons are axiomatic norms articulating general standards of professional conduct. DRs are mandatory statements of the minimum level of conduct below which no lawyer can fall without being subject to discipline. ECs are aspirational statements of objectives for the profession. *See Estate of Andrews v. United States*, 804 F. Supp. 820, 823 (E.D. Va. 1992).

This motion turns on Canon 5 which provides that "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." Canon 5 is implemented by DR 5-102, which is entitled "Withdrawal as Counsel When the Lawyer Becomes a Witness." DR 5-102(A) states:

> If, after undertaking employment in… pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, ***he shall withdraw*** from the conduct of the trial and ***his firm, if any, shall not continue representation in the trial…***

(emphasis added.) Once a lawyer learns (or it is obvious) that he will be called as a witness, he and his firm are obligated to withdraw from representation except under the three exceptional circumstances articulated in DR 5-101(B), none of which are present here. *See Personalized Mass Media Corp.*, 899 F. Supp. at 244-45. This motion is also supported by DR 5-102(B), which applies where "after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client ..." DR 5-102(B) (emphasis added). In that instance, the lawyer "may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." DR 5-102(B).

Taken together, DR 5-101(B) and DR 5-102(A) and (B) comprise the "witness-advocate" rule, which generally prohibits lawyers from serving as an advocate and a witness in the same

- 5 -

proceeding. The witness-advocate rule "derives from the fundamental fact that the roles of advocate and witness are inconsistent, it being the function of the advocate to argue the cause of another and the role of a witness to state facts objectively." *Id.* In recognition of the "fundamental difference in the roles of witness and advocate, the rule serves as a 'prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole.'" *Id.* (quoting *Estate of Andrews,* 804 F. Supp. at 823). Other courts in this circuit have held that "[a]n actual conflict of interest exists when the attorney has independent information about facts in controversy relating to his client and would, therefore, be faced with the possibility of testifying." *U.S. v. Dyess*, 231 F. Supp. 2d 493, 495- 96 (S.D. W. Va. 2002) (citation omitted); *U.S. v. Franklin*, 177 F. Supp. 2d 459, 467 (E.D. Va. 2001)(same) (citation omitted). Moreover, "[w]here the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *Int'l Woodworkers of Am.*, 659 F.2d at 1272 (internal citations omitted).

Thus, Cislo and his firm must withdraw, or be disqualified.

## CONCLUSION

For these reasons, Sunbeam requests that this Court grant Sunbeam's motion to disqualify Daniel Cislo and Cislo & Thomas as counsel for Homeland in this action.

Date: May 24, 2010                              Respectfully Submitted,


                                                By:   /s/ Paul Gennari
                                                Paul A. Gennari (VSB No. 46890)
                                                Tremayne M. Norris (pro hac vice)
                                                Steptoe & Johnson LLP
                                                1330 Connecticut Avenue, NW
                                                Washington, DC 20036
                                                Telephone:  (202) 429-6413
                                                Fax:  (202) 429-3902
                                                pgennari@steptoe.com
                                                tnorris@steptoe.com

                                                Thomas G. Pasternak (pro hac vice)
                                                Steptoe & Johnson LLP
                                                115 South La Salle Street, Suite 3100
                                                Chicago, IL 60603
                                                Telephone: (312) 577-1265
                                                Fax: (312) 577-1370
                                                tpasternak@steptoe.com


                                                *Attorneys for Plaintiff Products, Inc. d/b/a Jarden Consumer Solutions*