IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNBEAM PRODUCTS, INC.
d/b/a JARDEN CONSUMER
SOLUTIONS,

    Plaintiff,

v.                                  Civil Action No. 3:09cv791

HAMILTON BEACH BRANDS, INC.,
et al.,

    Defendants.

[FILED JUL 22 2010 CLERK, U.S. DISTRICT COURT RICHMOND, VA]

## MEMORANDUM OPINION

This matter is before the Court on Defendant HOMELAND HOUSEWARES, LLC'S MOTION TO DISQUALIFY STEPTOE & JOHNSON LLP (Docket No. 96).[1] For the reasons that follow, the motion will be granted.

## BACKGROUND

The Plaintiff, Sunbeam Products, Inc. ("Sunbeam") asserts claims for infringement of two patents against the Defendants, Hamilton Beach Brands, Inc. ("Hamilton Beach"), Homeland Housewares, LLC ("Homeland"), Alchemy Worldwide, LLC ("Alchemy"), and Back to Basics Products, LLC ("Back to

---

[1] Homeland has requested that the motion be decided on the papers. Sunbeam did not ask for argument in its supplemental brief (having said that it would do so if it desired further argument). In any event, the issues are adequately briefed and oral argument would not materially aid the decisional process.

Basics"). The patents relate to vessels that attach to blending bases whereby blended contents may be consumed, with the aid of a "drinking cap," directly from the vessel after blending.

The Court, in a recent Memorandum Opinion, denied Homeland's Motion to Stay the Litigation Pending Inter Partes Reexamination. <u>Sunbeam Prods. v. Hamilton Beach Brands, Inc.</u>, No. 3:09CV791, 2010 U.S. Dist. LEXIS 45654 (E.D. Va. May 7, 2010). Claim construction briefs have been filed, and discovery is underway. During the course of these proceedings, Homeland learned that Steptoe & Johnson, Sunbeam's counsel, employs an attorney named Andrew Chen who, while previously employed by Cislo & Thomas, Homeland's counsel, represented Homeland in litigation and patent applications involving its Magic Bullet® product, a product accused by Sunbeam of infringing Sunbeam's patents-in-suit.

A review of Chen's 2004 timesheets while employed at Cislo & Thomas shows that he drafted a Complaint against TriStar Products, alleging infringement of patents embodied in Homeland's Magic Bullet product. See <u>Homeland Housewares LLC v. TriStar Products Inc</u>, No. 2:04-cv-02831 (C.D. Cal. 2004). His work on the <u>TriStar</u> litigation included conducting a pre-filing investigation of TriStar's product, preparing a cease-and-desist letter to Tristar, researching a possible temporary restraining order and preliminary injunction, and preparing correspondence

2

to Homeland about the status of its intellectual property portfolio.

Chen's timesheets also show that he "[p]repar[ed] electronic images of new Magic Bullet embodiments, prepared instructions for draftsmen in connection with new drawings for bullet mugs and shaker attachments for the Magic Bullet," and "prepar[ed a] prior art search request letter regarding mug embodiments." His work also involved "[p]reparing correspondence to client regarding pending Magic Bullet Matters," "[a]nalyzing various embodiments of mugs and caps to determine scope of coverage," "analyzing prior art references in view of client's mug embodiments, [and] initiat[ing] [a] preliminary patentability opinion letter." Chen prepared utility and design patents respecting the accused product, and he performed analysis of the prior art, some of which is being pressed by Homeland in this case as part of its invalidity defense. Chen prepared a patentability opinion as to the accused product when he prepared patent applications for Homeland, and those opinions were given to Homeland in formal opinion letters. He prepared two Petitions to Make Special regarding two Homeland Patents related to the Magic Bullet, prepared a design patent application related to the Magic Bullet, and conducted a phone interview with a patent examiner about one of these patents.

3

Chen is not performing any work for Sunbeam in the present action. Nor does it appear that he has performed any work for Sunbeam during his tenure at Steptoe & Johnson.

Homeland's argument for disqualification requires the application of two of the Virginia Rules of Professional Conduct (VRPC). First is Rule 1.9(a), which prohibits "[a] lawyer who has formerly represented a client in a matter," from "thereafter represent[ing] another person in the same or a substantially related matter" when the present and former client's "interests are materially adverse." Second is Rule 1.10, which precludes any lawyer in a firm from representing a client when any other lawyer in that firm would be barred from representation under Rule 1.9. Thus, contends Homeland, because Chen could not represent Sunbeam without violating Rule 1.9, no member of Steptoe & Johnson can represent Sunbeam in accordance with Rule 1.10(a).

## APPLICABLE LAW

According to Local Rule 83(I) for the Eastern District of Virginia, "[t]he ethical standards relating to the practice of law in civil cases in this Court shall be the Virginia Rules of Professional Conduct, as published in the version effective January 1, 2000." Although a proposed amendment would replace the language "as published in the version effective January 1,

2000" with "as currently in effect," the Court continues to operate under the rules as published on January 1, 2000. It does not appear, however, that any discrepancy between the rules as enacted ten years ago and the rules as they stand today has any impact on the issues now before the Court.

"Disqualification of an attorney 'is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified.'" Kronberg v. Larouche, 2010 U.S. Dist. LEXIS 35097 (E.D. Va. Apr. 9, 2010) (quoting In re Stokes, 156 B.R. 181, 185 (Bankr. E.D. Va. 1993)). See Aetna Cas. & Surety Co. v. United States, 570 F.2d 1197, 1200 (4th Cir. 1978) (requiring the existence of an "actual conflict" as defined by the ethical rules before disqualification is proper); Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 145 (4th Cir. 1992) (observing that "disqualification . . . may not be rested on mere speculation" about a conflict of interest). "The high standard of proof is fitting in light of the party's right to freely choose counsel, and the consequent loss of time and money incurred in being compelled to retain new counsel." Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 730 (E.D. Va. 1990) (citations omitted). Disqualification questions are necessarily case-specific and fact-intensive, and reject the "'mechanical' application of

disciplinary rules, [] instead seek[ing] analysis of the harm to the actual parties before the court." Rogers v. Pittston Co., 800 F. Supp. 350, 353 (W.D. Va. 1992).

Yet, a party's right to choose counsel "is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'" Tessier, 731 F. Supp. at 730 (citations omitted). Our Court of Appeals has directed that ethical rules are not to be applied "with hair-splitting nicety," but, rather, "with the view of preventing 'the appearance of impropriety,' [the Court] is to resolve all doubts in favor of disqualification." Sanford v. Virginia, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009) (quoting United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977)).

As to the specific rules at issue here, VRPC Rule 1.9 governs the propriety of representation when a current client's interest may conflict with that of a former client. Rule 1.9(a) covers a lawyer who previously represented a client. In essence, when a lawyer has previously represented Client A, he may not represent Client B in "a substantially related matter in which [Client A]'s interests are materially adverse to the interests of [Client B] unless both the present and former client consent after consultation." Rule 1.9(b) provides that, when a lawyer's *firm* has previously represented Client A, and

the lawyer leaves that firm, he may not thereafter represent Client B against Client A when the parties' interests are materially adverse *and* the lawyer had acquired confidential, material information about Client A.

The key to assessing "the question of attorney disqualification in the successive representation context" is assessing the substantiality of the relationship between the present and the prior representation. Tessier, 731 F. Supp. at 730. An attorney-client relationship with the past client is, of course, a predicate to the consideration of a conflict. Id. And, "once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter;" the moving party does not have the evidentiary burden of showing actual disclosure of confidences. Id. at 731. Where, as here, an attorney-client relationship was formed, and the interests of the past and former clients are materially adverse, then disqualification turns solely on whether the past and present representation are substantially related.

Examples of a substantial relationship in the commentary to Rule 1.9 instruct that "a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client," nor could "a lawyer who has prosecuted an accused person [] properly represent the accused in a subsequent

civil action against the government concerning the same transaction." VRPC Rule 1.9 n.1. Other commentary suggests that a lawyer's degree of involvement in the prior representation bears upon the substantiality of the relationship. See id. n.2 ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

Decisional law teaches that a substantial relationship is found when the subject matter of the two representations is "identical" or "essentially the same." Tessier 731 F. Supp. at 730; Rogers at 353. But the test encompasses more than situations in which the issues are indistinguishable; "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second," Tessier, at 730, then the matters are considered to be substantially related.

In the intellectual property context, "[a] number of cases [that] involve two different patents or trademarks, but with some colorable connection between the technologies, businesses or marks," have been compared, in the disqualification context, to determine whether they are substantially related. Samuel C. Miller III, Ethical Considerations in Rendering Patent Opinions, 88 J. Pat. & Trademark Off. Soc'y 1019, 1041-42 (2006).

8

"Sometimes a substantial relationship has been found, sometimes not. In the main, these cases are fact-bound evaluations of the degree of risk perceived by the court that a former client's secrets will be revealed or used in a later action." Id.

Identity of the intellectual property at issue is not dispositive; substantial relatedness must encompass the underlying legal issues. In a relatively recent case in the Western District of Virginia, the court found that trade secrets, the substance of which may have been revealed to a law firm while it represented M-CAM, were not substantially related to a later claim in which M-CAM sued a defendant that a law firm represented, because the latter case did "not revolve around the content or the interpretation of the information," but rather "whether [the defendant] misappropriated that information." M-CAM, Inc. v. D'Agostino, No. 3:05cv6, 2005 U.S. Dist. LEXIS 45290, at *4-5. Still, other district courts within the Fourth Circuit have observed, in the patent context, that "in order to show a substantial relationship, 'it is not necessary that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issue.'" Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 514, 518 (M.D.N.C. 1996) (quoting Buckley v. Airshield Corp., 908 F. Supp. 299, 304 (D. Md. 1995)). "The Court's focus must properly be on the litigation

issues in the prior and present action" or representation. Buckley, at 306.

When all of the elements of a conflict of interest under 1.9(a) are established as to a lawyer, VRPC Rule 1.10(a) mandates, without exception, imputation of that conflict to the entire firm. Although this imputation may be ameliorated if the conflicted lawyer leaves the firm (e.g., if Chen, hypothetically, had left the firm last week), LifeNet, Inc. v. Musculoskeletal Transplant Foundation, 2007 U.S. Dist. LEXIS 29058 (E.D. Va. Apr. 19, 2007), imputation applies so long as the lawyer remains with the firm. Thus, the inescapable impact of Rule 1.10(a) is that a firm cannot represent a client in litigation if any member of the firm previously has represented any party directly adverse to that client in the litigation, when the subject matter of the past representation and the present litigation are "substantially related."

## DISCUSSION

To ensure that the analysis begins on the proper analytical footing, Rule 1.9(a), and not 1.9(b), appears to be the source of the alleged conflict of interest. Homeland does not assert conflict on the basis of Chen gaining specific information because of his *firm's* representation involving the Magic Bullet, but rather on the basis of Chen's own representation of

Homeland. In sum, Homeland asserts that Chen's work "on clearing, protecting, and enforcing intellectual property rights to the MAGIC BULLET blender product" bears a substantial relationship to the issues in the present litigation.

Sunbeam concedes the existence of a prior attorney-client relationship between Chen and Homeland. Sunbeam also does not dispute that any conflict attributed to Chen is imputed to the entire firm of Steptoe & Johnson. And Sunbeam could not, of course, argue that its interests are not adverse to Homeland's. Sunbeam thus agrees that the dispositive issue is whether Steptoe's current representation of Sunbeam is substantially related to Chen's prior representation of Homeland while he was at Cislo & Thomas.

Sunbeam informs the Court that, as part of the firm's standard conflict review procedures before the Complaint was filed, the leader of Steptoe & Johnson's Intellectual Property Practice (Alfred Mamlet) identified the potential conflict and spoke to Chen about his prior representation of Homeland, and concluded that it was "not the same or substantially related." Mamlet Decl. ¶ 9. In support of this conclusion, Mamlet relates that "Mr. Chen had not conducted a 'freedom to operate' study, analyzed a Sunbeam assertion letter, or otherwise engaged in work on the Sunbeam patents that would be asserted in the case.

Moreover, Sunbeam's infringement action did not challenge or even implicate Homeland Housewares' patents." Id.

Sunbeam also argues that Chen does not recollect any material information about the Homeland patents, although it does acknowledge his work relating to the Magic Bullet. Sunbeam asserts that, as a third-year associate at the time, Chen was not involved in developing litigation strategy. However, these arguments do not undermine the substantial relatedness of the subject matter of the past representation to the present action. Even if, as is asserted, Chen did not have considerable contact with Homeland clients while at Cislo & Thomas, that does not mean he did not receive client confidences from the partners who did speak directly to clients. Thus, the "irrebuttable presumption" arises, Tessier, 731 F. Supp. at 731, that confidential information was exchanged when, as here, a prior attorney-client relationship existed.

Here, the appearance of impropriety that Rules 1.9(a) and 1.10(a) target is obvious. Based on the extensive, wide-ranging activities that Chen himself documented on his timesheets, Chen was in position to have significant inside information on a range of patent issues surrounding the allegedly infringing Magic Bullet product and its patentability. There is no doubt that Chen "could have obtained confidential information in the first representation," on behalf of Homeland, "that would [be]

12

relevant in the second," Steptoe & Johnson's representation of Sunbeam. Tessier, 731 F. Supp. at 730.

Sunbeam relies on a number of cases from outside the Fourth Circuit in which district courts have parsed the issues in the prior and current representations finely so as to distinguish the two representations and declare them not to be substantially related. See, e.g., Power Mosfet Techs. v. Siemens AG, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sept. 30, 2002) (declining to disqualify counsel despite extensive overlap between prior and former representations because the issues involved in the two representations were distinguishable in some ways); Lemelson v. Synergistics Research Corp., 504 F. Supp. 1164, 1167 (S.D.N.Y. 1981) (finding no conflict after rejecting the view, embraced in the Eastern District of Virginia, that "an irrebuttable presumption of receipt of confidential information" arises from an attorney's prior representation). These authorities neither control nor persuade the Court to engage in the sort of "hair-splitting," which the Fourth Circuit expressly has said cannot be done. Clarkson, 567 F.2d at 273 n.3. Even if the decisions relied on by Sunbeam were not contrary to controlling circuit law, their persuasive authority would be minimal, given the numerous cases that have found a substantial relationship when the subject matter of patents overlapped as extensively as is the case here and where, as here, the lawyer's work goes

directly to issues that are central to the subjects in the successive representation. See e.g., Thorner v. Sony Computer Entm't Am., Inc., 2009 U.S. Dist. LEXIS 108422 (D.N.J. Nov. 20, 2009) (finding substantial relatedness when the attorney's prior representation involved "prosecution of patents involving technology that is related to . . . patents" that the attorney alleged were infringed in his then-extant representation); Cameron Iron Works, Inc. v. Hydril Co., 1980 U.S. Dist. LEXIS 16489, 208 U.S.P.Q. 672 (S.D. Tex. 1980) (disqualifying an attorney under similar circumstances). Sunbeam's citations may demonstrate the fact-specific nature of the inquiry, but they do not provide compelling arguments against disqualification in the case at bar.

On this record, the substantial relationship has been clearly shown between the prior and successive representations. Chen was involved in patent prosecution work for the accused product. He analyzed prior art for the application that he drafted for the accused product. He performed a non-infringement analysis as part of the process. He had unrestricted access to Homeland's files at Cislo & Thomas.

It appears quite clear that Chen's work in analyzing prior art for the patent related work on the Magic Bullet bears a substantial relationship to issues in this case that involve prior art. Sunbeam used the Homeland patents for the Magic

Bullet as evidence in the claim construction process. That also tends to support a substantial relationship finding. In sum, Homeland has established the substantial relationship, and disqualification must follow.

The rules that safeguard the integrity of the judicial process and the protection of clients' confidences do not countenance the appearance of impropriety, and disqualification decisions must foster public confidence in the ethics of the Court and the bar. Thus, even if, as Sunbeam contends, the question was a close one (which it is not), the rules require that doubts be resolved in favor of disqualification. Because of the difficulty, if not impossibility, of proving what client confidences were made known to the lawyer, the law does not require a party moving for disqualification to make any showing of exchanged confidences, but rather irrebuttably presumes such exchange of confidences in any attorney-client relationship. Nor does the law require a showing that Chen communicated with other Steptoe & Johnson attorneys about issues that arose in his prior representation of Homeland. In the successive representation context, the rules guard against the possibility of impropriety by prohibiting the kind of scenarios that would enable impropriety most easily to occur.

And, as Homeland asserts, "any prejudice to Sunbeam is of its own counsels' making." If Steptoe had thoroughly undertaken

to understand the scope and impact of Chen's prior representation under VRPC Rules 1.9 and 1.10, it is difficult to believe that it would have accepted representation in this action.

## CONCLUSION

For the reasons set forth above, Steptoe should be disqualified, Defendant HOMELAND HOUSEWARES, LLC'S MOTION TO DISQUALIFY STEPTOE & JOHNSON LLP (Docket No. 96) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 22, 2010