IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNBEAM PRODUCTS, INC. d/b/a JARDEN
CONSUMER SOLUTIONS,

     Plaintiff,

v.

HAMILTON BEACH BRANDS, INC., ET AL.,

     Defendants.

Civil Action No. 3:09cv791 REP

## MEMORANDUM IN SUPPORT OF ALCHEMY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF BOTH OF THE PATENTS–IN–SUIT

Alchemy Worldwide, LLC formerly known as Alchemy Worldwide, Inc. ("Alchemy"), by and through its undersigned counsel, submits this Memorandum in Support of Alchemy's motion for summary judgment pursuant to Rule of Civil Procedure 56(b), for invalidity of all claims of both of Plaintiff Sunbeam Products, Inc.'s ("Sunbeam") U.S. Patents Nos. 6,758,592 ("the '592 patent") and 7,520,659 ("the '659 patent") (collectively "patents-in-suit" or "asserted patents"). The claims of both patents-in-suit are invalid as anticipated by prior art blender products, like the Kiss® Mixer blender, and Sunbeam's own Mini-Blend® blender products, which have been sold since the 1960's sold under its Oster® brand. Any claims that are not anticipated are obvious, as a matter of law, given the above prior art in light of numerous drinking cap prior art references. In addition, the patent claims are invalidated by the on-sale bar, based on sales of the Kiss Mixer and Mini-Blend products, as well as the drinking cap prior art.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iv

I.  INTRODUCTION ................................................................................ 1

II. FACTUAL BACKGROUND ................................................................. 2

    A.  The Patents-In-Suit Claim a Blender Base, a Blender Container,  a Blade
        Base, and a Cap ........................................................................ 2

    B.  Sunbeam's Mini-Blend® and Blend 'N Store Prior Art Disclosed  the
        Non-Drinking Cap Claim Elements .............................................. 3

    C.  The Kiss® Mixer Prior Art Also Disclosed the Non-Drinking Cap Claim
        Elements ................................................................................. 6

    D.  The Drinking Cap Art was Well-Established by the Priority Date and
        Disclosed the Drinking Cap Claim Elements .................................. 6

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................ 6

    A.  Undisputed Facts Regarding the Patents-in-Suit ............................ 6

    B.  Undisputed Facts Regarding the Sunbeam Mini-Blend® and  Blend 'N
        Store™ Products ....................................................................... 7

    C.  Undisputed Facts Regarding the Kiss® Mixer Product ...................... 9

    D.  Undisputed Facts Regarding Drinking Cap Prior Art ....................... 10

IV. LEGAL STANDARD FOR SUMMARY JUDGMENT ............................. 11

V.  LEGAL STANDARDS FOR PATENT INVALIDITY ............................. 11

    A.  The Legal Standard for a Determination of Anticipation .................. 11

    B.  The Legal Standard for a Determination of On-Sale Bar .................. 12

    C.  The Legal Standard for a Determination of Obviousness ................. 12

    D.  The Presumption of Patent Validity is Rebuttable .......................... 13

    E.  Level of Ordinary Skill in the Art ............................................... 14

VI. THE COURT'S CLAIM CONSTRUCTION REFLECTS THE BROAD
    SCOPE OF THE CLAIMS, WHICH RENDERS THEM INVALID ............... 14

VII. THE MINI-BLEND® CONTAINER INSTRUCTIONS ANTICIPATE
CLAIMS 4-8 AND 11-12 OF THE '592 PATENT ........................................ 15

    A.    The Disclosure of the Mini-Blend® Container Packaging and Instructions ...... 15

    B.    The Mini-Blend Container Instructions Anticipate the Non-Drinking Cap
Claims ........................................................................................ 16

        1.    The Mini-Blend® Container Packaging and Instructions Anticipate
Independent Claim 4 of the '592 Patent ..................................... 16

        2.    Detailed Application of the Mini-Blend® Packaging and
Instructions to Claim 4 of the '592 Patent ................................. 17

VIII. THE KISS® MIXER ANTICIPATES THE NON-DRINKING CAP CLAIMS ......... 18

    A.    The Kiss Mixer Anticipates Independent Claim 4 of the '592 Patent ........... 18

    B.    Detailed Application of the Kiss Mixer to Claim 4 of the '592 Patent ......... 19

IX. CAPS WITH DRINKING HOLES WERE WELL KNOWN BEFORE THE
PRIORITY DATE OF THE ASSERTED PATENTS ...................................... 21

    A.    The Sadlier Cap Includes a Drinking Hole ......................................... 21

    B.    The Demars Cap Includes a Drinking Hole and Closure Tab ..................... 21

    C.    The Ito Cap Includes a Drinking Hole, a Closure Tab, and Screw
Threads ...................................................................................... 22

    D.    The Wang Cap Includes a Drinking Hole, a Closure Tab, and Screw
Threads ...................................................................................... 22

    E.    The Drinking Cap Claims of The Patents-In-Suit Are Obvious Because
Combining a Blender Beverage Container and a Drinking Cap with a
Drinking Hole Was Common Sense, Obvious to Try, and Yielded
Predictable Results ....................................................................... 23

    F.    A Person of Ordinary Skill Would Have Had Ample Motivation to
Make the Claimed Combination ....................................................... 25

    G.    The Drinking Cap Claims are Obvious Over either the Mini-Blend
Container or the Kiss® Mixer in View of the Kiss® Mixer Funnel Cap
and/or Skill in the Art .................................................................. 26

    H.    Detailed Application of the Prior Art to Claims 1 and 3 of the '592
Patent ....................................................................................... 27

    I.    Sunbeam's Weak Evidence of Secondary Considerations Cannot

        Overcome the Compelling Prima Facie Case of Obviousness.................... 27

X.     ALL OF THE CLAIMS ARE INVALID DUE TO THE ON-SALE BAR ............. 28

XI.    CONCLUSION ................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986)........................................ 11

*Asyst Technologies, Inc. v. Emtrak, Inc.,*
   544 F.3d 1310 (Fed. Cir. 2008) ................................................................... 27, 28

*Atlas Powder Co. v. IRECO, Inc.,*
   190 F3d 1342 (Fed. Cir. 1999) .......................................................................... 11

*Cable Electric Products, Inc. v. Genmark, Inc.,*
   770 F.2d 1015 (Fed. Cir. 1985) ........................................................................ 13

*Celeritas Tech., Ltd v. Rockwell International Corp.,*
   150 F.3d 1354 (Fed. Cir. 1998) ........................................................................ 11

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................................ 11

*Chore-Time Equipment, Inc. v. Cumberland,*
   713 F.2d 774 (Fed. Cir. 1983)........................................................................... 13

*Dystar Textilfarben GMBH & Co. v. C.H. Patrick Co.,*
   464 F.3d 1356 (Fed. Cir. 2006) ........................................................................ 13

*Ferag AG v. Quipp, Inc.,*
   45 F.3d 1562 (Fed. Cir. 1995)...................................................................... 12, 28

*Graham v. John Deere Co.,*
   383 U.S. 1, 86 S. Ct. 684; 15 L. Ed. 2d 545 (1966)............................................... 13

*In re Napier,*
   55 F.3d 610 (Fed. Cir. 1995) ............................................................................ 12

*Iron Grip Barbell Co., Inc. v. York Bar-Bell Co., Inc.,*
   392 F.3d 1317 (Fed. Cir. 2004) ........................................................................ 28

*J.A. La Porte, Inc. v. Norfolk Dredging Co.,*
   787 F.2d 1577 (Fed. Cir. 1986) ........................................................................ 12

*KSR International Co. v. Teleflex, Inc.,*
   127 S. Ct. 1727, 1734, 550 U.S. 398, 167 L. Ed. 2d 705 ............................. 12, 13, 25

*Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.,*
   485 F.3d 1157 (Fed. Cir. 2007) ........................................................................ 27

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,*
  984 F.2d 1182 (Fed. Cir. 1993) ................................................. 12

*Perfect Web Technologies, Inc. v. InfoUSA, Inc.,*
  587 F.3d 1324 (Fed. Cir. 2009) ................................................. 28

*Pfaff v. Wells Elecs., Inc.,*
  525 U.S. 55, 119 S. Ct. 304, 142 L. Ed. 2d 261 (1998) ........................ 12

*Ryko Manufacturing Co. v. Nu-Star, Inc.,*
  950 F.2d 714 (Fed. Cir. 1991) ................................................. 11

*SmithKline Beecham Corp. v. Apotex Corp.,*
  403 F.3d 1331 (Fed. Cir. 2005) ................................................ 12

*SSIH Equipment S.A. v. U.S. Int'l Trade Commission,*
  718 F.2d 365 (Fed. Cir. 1983) ................................................. 14

*Stratoflex, Inc. v. Aeroquip Corp.,*
  713 F.2d 1530 (Fed. Cir. 1983) ................................................ 14

*Wyers v. Master Lock Co.,*
  95 USPQ2d 1525, 2010 U.S. App. LEXIS 15271 (Fed. Cir. July 22, 2010) ......... 28

## Statutes

35 U.S.C. § 102(a) ............................................................. 11

35 U.S.C. § 102(b) ............................................................. 12

35 U.S.C. § 103 ................................................................ 12

35 U.S.C. § 113 ................................................................ 23

35 U.S.C. § 282 ................................................................ 13

37 C.F.R. § 1.83 .............................................................. 23

# I.   INTRODUCTION

The prior art invalidates all of the claims of both patents-in-suit.  The patents-in-suit disclose a blender assembly that includes at least: (a) a blender container, (b) a blade base that screws onto the container, and (c) a screw-on cap that can be interchanged with the blade base.  The cap may either be an ordinary cap or it may contain a hole for drinking.  The set of claims drawn to the above combination with an ordinary cap are claims 4-8 and 10-12 of the '592 patent (hereinafter the "non-drinking cap claims").  The set of claims drawn to the above combination, but with a drinking hole in the cap are claims 1-3 and 9-10 of the '592 patent and 1-12 of the '659 patent (hereinafter the "drinking cap claims").

Three prior art references, *including Sunbeam's own products*, also disclose (a) a blender assembly that includes a blender container, (b) a blade base that screws onto container, and (c) a screw-on cap that can be interchanged with the blade base.  Thus, each of these products and references anticipate and invalidate the non-drinking cap claims.  These prior art references include: (1) the Oster Mini-Blend® container, first sold in 1965, and its instructions and packaging, (2) the Oster Blend N' Store™ product (essentially a larger version of the Mini-Blend container), for which a design patent issued in 1975, and (3) the Kiss® Mixer, first advertised and sold in 1999, which is substantially similar to the accused Magic Bullet® products.

The drinking cap claims are invalid as obvious when the above references are considered in view of a number of drinking cap prior art references.  These drinking cap references include the patents of Sadlier (1999), Ito (1995), Wang (2000), and Demars (1990).  A drinking cap, as this Court has construed the term, is a cap with a hole that allows a person to drink the contents of the beverage container through the hole in the cap.  Simply adding a hole in a prior art cap for a blender assembly is obvious.  Even the inventors must have thought the combination was obvious, as they

failed to include any illustrations in the patent applications depicting the drinking hole in the cap.

All of this prior art significantly predates the earliest priority date of the patents-in-suit, which is April 13, 2001. Moreover, Sunbeam had full knowledge of the Oster prior art in advance of filing and/or acquiring the patents-in-suit, having acquired Oster in 1960. The Oster Mini-Blend® container was sold in the United States from at least 1965 through at least 2006. The Oster Blend 'N Store™ was sold in the United States from approximately 1975 through at least 1999. Despite selling the Mini-Blend® container or the Blend 'N Store for over 35 and 25 years respectively at the time Sunbeam filed the parent application of the patents-in-suit, Sunbeam failed to disclose either during the prosecution of the '592 Patent application, and only disclosed the Mini-Blend in an incomplete and deceptive manner during the prosecution of the '659 Patent application. Sunbeam knows full well that the Mini-Blend® container completely anticipates all of the non-drinking cap claims; yet Sunbeam is still brazenly refusing to withdraw those infringement claims in this case.

For all these reasons, the Motion for Summary Judgment should be granted.

## II.  FACTUAL BACKGROUND

### A.  The Patents-In-Suit Claim a Blender Base, a Blender Container, a Blade Base, and a Cap

The '592 and '659 patents both claim priority from a single prior application. (Thuma Decl., ¶5; Exhs. A and B.)[1] Thus, both patents have the same priority date of April 13, 2001. (*Id.*) The specifications of both patents are essentially the same; the drawing figures are identical and the claims are very similar. (*Id.* at ¶6.)

Figure 19 of the patents-in-suit, reproduced below, illustrates the claimed blender. Figure 2, a portion of which is reproduced below, has the only illustration of the "cap" (labeled "198").

---

[1]  Michael Thuma is Alchemy's expert witness on obviousness. His declaration is filed herewith.



| Fig. 19 of the '592 and '659 Patents | Relevant portions of Fig. 2 of the '592 and '659 Patents |
|---|---|

The non-drinking cap claims of the '592 patent simply recite "a cap." No drawing figure depicting the appearance of the generic cap is to be found in the patents-in-suit. (*Id*. at ¶9.)

With regard to the drinking cap claims, the claimed drinking cap is briefly discussed in the patent specification by reference only to an optional "drinking hole" and a "closure tab" in the "cap," referring to Figure 2. (Thuma Decl. at Exh. A, col. 11, lines 44-45). No further explanation is given. Figure 2, however, only shows the cap in profile, and thus fails to either illustrate or point to any type of "drinking hole" or "closure tab." (*Id*. at ¶10; Exhs. A and B, Fig. 2 of each.)

### B. Sunbeam's Mini-Blend® and Blend 'N Store Prior Art Disclosed the Non-Drinking Cap Claim Elements

Decades before the patents-in-suit were filed, the original Sunbeam Corporation, through its Oster brand, introduced the Oster Mini-Blend® container.[2] The Mini-Blend® and its Packaging and Instructions also featured blade bases and caps that were interchangeable on the blender container. Thus, the Mini-Blend container instructions disclosed each element of the non-drinking cap claims,

---

[2] Sunbeam Corp. acquired the John Oster Manufacturing Company in 1960. In 2002 Sunbeam Corp. emerged from bankruptcy as American Household, Inc. ("AHI"), and its former household products division became the subsidiary Sunbeam Products, Inc. In 2005, Jarden Corp. acquired AHI. (*See* Jarden website http://www.jardencs.com/AboutUs.aspx?section=History).

and further disclosed each element of the drinking cap claims, except for the hole in the cap and the closure tab. The Mini-Blend container was first introduced to the market in 1965, <u>36 years</u> before the priority date of the patents-in-suit,[3] although, Sunbeam failed to disclose it at all to the Patent Office in connection with the application for the '592 Patent. During prosecution of the '659 Patent, Sunbeam only made an incomplete and deceptive disclosure of the Mini-Blend container, and only did so after being confronted with the omission by a defendant in this case, Back to Basics.

 

The Mini-Blend Packaging, above, discloses a blender base, a blender container, a cap for the

---

[3] Although the Mini-Blend packaging (above), and instructions (below) were copyrighted in 1982 and 1981, respectively (Nielsen Decl. ¶11; Exh. 8, 9), Oster registered the Mini-Blend® mark in 1965 (Reg. No. 0822361), when it introduced the product with glass containers, and registered the mark again in 1972 for plastic containers (Reg. No. 1024354). (*Id.* at ¶¶ 4, 8, Exh.

container and a blade base for interfacing the container with the blender base. (Thuma Decl., ¶47; Exh. C.) The Mini-Blend container has an external thread. The blade base and the container's cap have internal threads, which allow them to be interchangeable on the container. (*Id.* at ¶¶49-51.)

Similarly, the Oster Blend 'N Store™ container is a larger version (30 ounce) of the Mini-Blend (8 ounce) container. (Thuma Decl. ¶ 48, Nielsen Decl. Exhs. 11-16, 18-21). Oster's design patent for the Blend 'N Store, issued in 1975 (Pat. No. D242,302), is referenced on the Mini-Blend Instructions shown below, which also includes a depiction of the Blend 'N Store container. Like the Mini-Blend container, the Blend 'N Store container featured interchangeable blade bases and caps. (Thuma Decl. ¶¶ 48, 50-51). Thus, the Blend 'N Store disclosed each element of the non-drinking cap claims some <u>26 years</u> before the priority date of the patents-in-suit.



Mini-Blend® Instructions: shows 30-oz. Blend 'N Store container (above left and below right), interchangeable blade base and lids, "uses" for the Mini-Blend containers, Pat. No. D242,302, and copyright 1981. (Nielsen Decl. Exh. 9)



Additionally, some "uses" for the 30-ounce Blend 'N Store listed on the Mini-Blend Instructions include blending drinks, including Health Drinks, Ice Cream Drinks, Diet Drinks, and

---

1, 5). For a history of the Mini-Blend container see the Nielsen Declaration, ¶¶ 4-16.

Alcoholic Drinks.  The Osterizer blender came with a large container for blending.  (*See, e.g.,* Fig. 2, above, item 36).  The Blend 'N Store and Mini-Blend containers were accessories, separately packaged and usually sold independent of the blender base.  (Nielsen Decl. Exh. 11-16, 18-21)

**C.     The Kiss® Mixer Prior Art Also Disclosed the Non-Drinking Cap Claim Elements**

In 1999, over a year before the priority date of the patents-in-suit, a product known as the Kiss® Mixer personal blender was advertised and sold in the United States.  (Larson Decl. ¶¶3(a)-(c), 4, Exhs. 1, 4).  The Kiss Mixer is substantially similar to the Magic Bullet® blender product accused by Sunbeam of infringing the patents-in-suit.  The Kiss Mixer featured screw-on blade bases and caps that were interchangeable on the blender container identical to the non-drinking cap claims in the patents-in-suit.  (Thuma Decl. ¶¶ 19-22; Larson Decl. ¶ 3(f)).

**D.     The Drinking Cap Art was Well-Established by the Priority Date and
Disclosed the Drinking Cap Claim Elements**

The Kiss® Mixer and the Mini-Blend® container products both lacked a drinking hole in their caps.  But by the earliest priority date of the patents-in-suit (April 13, 2001), the drinking cap art was already well developed.  For example, snap-on drinking caps for disposable cups such as those used at Starbucks or McDonalds had been used for many years prior to 2001, exemplified by the Sadlier and Demars patents filed in 1997 and 1989, respectively.  (*See* Thuma Decl., ¶¶ 35-36; Exh. F, G.)

Well before 2001, screw-on style caps like those described in the asserted patents also existed for use on travel mugs, exemplified by the Ito and Wang patents, filed in 1994 and 1998, respectively.  (*See* Thuma Decl., ¶¶ 37-38; Exhs. H and I.)  Three of these prior art caps also featured closure tabs, a feature disclosed in the patents-in-suit as an optional part of the drinking cap.

**III.     STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.     Undisputed Facts Regarding the Patents-in-Suit**

1.      The patents-in-suit have a priority date of April 13, 2001.  (Thuma Decl., ¶5; Exhs. A

6

and B, i.e. '592 and '659 patents.)

2.      The embodiment of Figure 19 of the patents-in-suit depicts a blender base, a blender container, and a collar or blade base. (Thuma Decl., ¶8; Exh. A, '592 patent, col. 11, lines 33-38; Exh. B, '659 patent, col. 11, lines 24-28.)

3.      The blender container of Fig. 19 has an open top end, a closed bottom end, and an external screw thread at its open top end. (Thuma Decl., ¶8.)

4.      The blade base or collar of Fig. 19 has a lower portion configured to be removably mountable on and off a blender and an upper portion having an internal screw thread which mates with the external screw thread of the blender container (of Fig. 19). (Thuma Decl., ¶8, 11.)

5.      The drinking cap of Figure 2 of the patents-in-suit is described as attaching to the blender container of Fig. 19 of the patents-in-suit via a screw thread. (Thuma Decl., ¶10; Exh. A, '592 Patent, col. 11, lines 42-43; Exh. B, '659 patent, col. 11, lines 32-33.)

6.      The blade base of Fig. 19 and the drinking cap of Fig. 2 are interchangeable on the blender container of Fig. 19. (Thuma Decl., ¶11.)

**B.      Undisputed Facts Regarding the Sunbeam Mini-Blend® and Blend 'N Store™ Products**

7.      The Mini-Blend® container was offered for sale in the United States from approximately 1965 to at least 2006. (Nielsen Decl. ¶¶ 4-8, 11, 14-16, Exhs. 1-5, 9, 11-21).

8.      Commercial embodiments of the Mini-Blend container were offered for sale and sold in the United States more than one year before April 13, 2001. (*Id.*).

9.      The Mini-Blend® instruction sheet ("Instructions") bears a copyright date of 1981 and is prior art to the patents-in-suit. (Nielsen Decl at ¶11; Exh. 9; Thuma Decl., ¶54; Exh. C, Fig. 2)

10.     The Mini-Blend Packaging, which also has a set of instructions ("Packaging") bears a copyright date of 1982 and is prior art to the patents-in-suit. (Nielsen Decl. ¶ 11, Exh. 8; Thuma

Decl., ¶52; Exh. C, Fig. 2, i.e. Mini-Blend Packaging.)

11. Design patent no. Des. 242,302 ("the '302 patent") for a "combined blender and storage jar" was filed July 11, 1975, and issued November 16, 1976. (Nielsen Decl. ¶ 10, Exh. 6).

12. The '302 patent is referenced on the Mini-Blend Instructions, as applying to the "30-OUNCE "MINI-BLEND" CONTAINER." (Nielsen Decl. ¶11; Exh. 9; Thuma Decl. Exh. C, Fig. 9).

13. The Mini-Blend Instructions have several depictions of the container shown in the '302 patent. (Nielsen Decl. Exh. 9).

14. The '302 patent is prior art to the patents-in-suit. (Thuma Decl. ¶ 52, Exh. P).

15. In Osterizer blender manuals, guides, and ads, the 30-oz accessory container is often referred to as the Blend 'N Store. (Nielsen Decl. Exh. 11-16, 18-21; Thuma Decl. ¶48, Exh. Q, R).

16. Together, the Mini-Blend Instructions and Packaging disclose a blender base, a blade base or collar, a blender container, i.e. the Mini-Blend and Blend 'N Store containers, and a flat cap for sealing the container. (Thuma Decl. ¶¶48-51; Exh. C, Figs 1-2, 5-6, 9; Nielsen Decl. Exhs. 8-10).

17. The Mini-Blend and Blend 'N Store containers have a closed bottom end, an open top end, and an external screw thread at the open top end. (Thuma Decl. ¶50; Exh. C, Figs 10-11, 14-15)

18. The Mini-Blend and Blend 'N Store containers have a portion of the container opposite the closed bottom portion of the container, said portion having an interface by which a cap screws onto the beverage container and an area that is not closed. (*Id.*)

19. The blade base used in connection with the Mini-Blend and Blend 'N Store containers is adapted to be removably mountable on and off a blender. (*Id.* at ¶51; Exh. C, Figs 1-2, 5-6, 9, 13)

20. The blade base depicted in the Mini-Blend Packaging and Instructions features an internal screw thread at its upper end for mating with the external screw thread of the Mini-Blend and Blend 'N Store containers. (*Id.*)

21.     The flat cap of the Mini-Blend and Blend 'N Store containers feature an internal screw thread for attaching the caps to the containers. (Thuma Decl., ¶51; Exh. C, Fig. 12.)

22.     The blade base and flat cap depicted in the Mini-Blend Packaging and Instructions are interchangeable on the Mini-Blend and Blend 'N Store containers. (*Id.* at Exh. C, Figs 1-2, 5-6, 9.)

23.     The Mini-Blend Instructions list "uses" for the 30-Oz Container, including blending "Health Drinks, Ice Cream Drinks, Diet Drinks, and Alcoholic Drinks." (Nielsen Decl. Exh. 9.)

24.     Commercial embodiments of the Blend 'N Store container were offered for sale and sold in the United States more than one year before April 13, 2001. (Nielsen Decl. Exhs. 11-21).

### C.     Undisputed Facts Regarding the Kiss® Mixer Product

25.     The Kiss® Mixer was first sold and first advertised in the United States in 1999 and is thus prior art to the patents-in-suit. (Thuma Decl. ¶¶23-24; Larson Decl. ¶¶3(a)-(c), 4, Exhs. 1, 4).

26.     Commercial embodiments of the Kiss Mixer were offered for sale and sold in the United States more than one year before April 13, 2001. (Larson Decl. ¶¶3(a)-(c), 4, Exhs. 1, 4).

27.     The Kiss Mixer discloses a blender base, a blade base or collar, a blender container, and a cap for sealing the container. (Thuma Decl. ¶17, Exh. D, Figs 1-7, 9, 11-12.)

28.     The blender container of the Kiss Mixer has an open top end, a closed bottom end and an external screw thread at its open top end. (Thuma Decl. ¶19, Exh. D, Figs. 4-7, 10.)

29.     The blender container of the Kiss Mixer has a portion of the container opposite the closed bottom portion of the container, said portion having an interface by which a cap screws onto the beverage container and an area that is not closed. (*Id.*)

30.     The Kiss Mixer instructions describe preparation of "health drink." (Larson Exh. E).

31.     The blade base of the Kiss Mixer is adapted to be removably mountable on and off a blender. (Thuma Decl. ¶20, Exh. D, Fig. 6.)

32.     The blade base of the Kiss Mixer features an internal screw thread at its upper end for mating with the external screw thread of the blender's container.  (*Id.* at ¶20; Exh. D, Figs. 4, 7.)

33.     The Kiss Mixer cap has an internal screw thread to attach it to the blender's container. (*Id.* at ¶21; Exh. D, Figs. 9-11.)

34.     The Kiss Mixer blade base and cap are interchangeable on the blender's container. (*Id.* at ¶21, Exh. D, Figs 2, 3, 6, 9, 11.)

## D.     Undisputed Facts Regarding Drinking Cap Prior Art

35.     U.S. Patent No. D417,845 ("Sadlier patent"); U.S. Patent No. 4,899,902 ("Demars patent"); U.S. Patent No. 5,456,380 ("Ito patent"); and, U.S. Patent No. 6,010,029 ("Wang patent") each disclose a drinking cap.  (Thuma Decl. ¶¶ 35-38, Exhs. F, G, H, I.)

36.     The Sadlier, Demars, Ito, and Wang patents are each prior art to the patents-in-suit. (Thuma Decl., ¶¶35-38; Exhs. F, G, H and I).

37.     The Sadlier, Demars, Ito, and Wang patents teach a hole in a drinking cap covering the beverage container, said hole being designed to allow the user to drink the contents of the beverage container while the cap is affixed atop the beverage container.

38.     Wang and Ito patents teach attaching a drinking cap to a container via a thread on the cap which mates with a thread on the container.  (*Id.* at ¶¶37-38; Exhs. H and I.)

39.     Wang and Ito patents teach a cap which, when screwed onto the beverage container, allows a person to drink the contents of the beverage container.  (*Id.*)

40.     Wang and Ito patents teach a cap which, when screwed onto the beverage container, allows a person to drink the contents of the beverage container through a hole in the cap.  (*Id.*)

41.     The Demars, Ito and Wang drinking cap patents teach the use of closure tabs to seal the drinking aperture.  (*Id.* at ¶¶36-38; Exhs. G, H and I.)

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Facts are considered material only if they might affect the outcome of the suit. Thus, factual disputes that are irrelevant cannot defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986). Likewise, issues are considered genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* If no reasonable jury could find in favor of the non-moving party, summary judgment is appropriate. *Id.*

## V.    LEGAL STANDARDS FOR PATENT INVALIDITY

Summary judgment is as appropriate to determine the issue of patent invalidity as any other. *Ryko Manufacturing Co. v. Nu-Star, Inc.*, 950 F.2d 714, 720 (Fed. Cir. 1991) (summary judgment of invalidity due to obviousness). Here, there is no genuine dispute that Sunbeam's own Mini-Blend products and the Kiss Mixer product are prior art. There is no genuine dispute that those references disclose every limitation in the non-drinking cap claims. The drinking cap claims are made obvious by those references in light of the numerous prior art drinking caps. .

### A.    The Legal Standard for a Determination of Anticipation

A patent claim may be anticipated by prior art pursuant to 35 U.S.C. §102 if every limitation of the claim is found in a single prior art reference, either explicitly or inherently. *Celeritas Tech., Ltd v. Rockwell International Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998); *Atlas Powder Co. v. IRECO, Inc.*, 190 F3d 1342, 1346 (Fed. Cir. 1999). To qualify as anticipatory prior art, the invention must either be patented or described in a printed publication prior to the conception date of the claims (*see* 35 U.S.C. § 102(a)), or more than one year before the filing date of the patent claims (*see*

35 U.S.C. § 102(b)). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005) (affirming summary judgment of invalidity for anticipation).

## B.   The Legal Standard for a Determination of On-Sale Bar

An invention is the subject of an on-sale bar if it was in public use or on sale in this county more than one year before the priority date of a United States patent. 35 U.S.C. § 102(b). The statute addresses the actions of the inventor or a third party. *J.A. La Porte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986). An impermissible sale has occurred if there was a definite sale, or offer to sell, more than 1 year before the effective filing date of the U.S. application ("critical date") and the subject matter of the sale, or offer to sell, fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. *Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1565 (Fed. Cir. 1995). The on-sale bar is triggered if the invention is both (1) the subject of a commercial offer for sale and (2) ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). A single offer for sale satisfies the "on-sale" requirement. *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1188 (Fed. Cir. 1993).

## C.   The Legal Standard for a Determination of Obviousness

A claim is obvious under 35 U.S.C. § 103 if, at the time the invention was made, "the combined teachings of the prior art, taken as a whole, would have rendered the claimed invention obvious to one of ordinary skill in the art." *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995). The scope and content of the prior art, the level of ordinary skill in the art at the time of the invention, and the differences between the claimed invention and the prior art are all considered. *KSR International Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1734, 550 U.S. 398, 167 L. Ed. 2d 705 (2007)

(*citing, Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684; 15 L. Ed. 2d 545 (1966)). The obviousness analysis is expansive and flexible. *KSR*, 127 S. Ct. at 1739. There is no requirement to find precise teachings directed to the specific subject matter of a claim; instead, common sense, inference, and creative steps that a person of ordinary skill in the art would employ should be taken into account. *Id.* at 1741. "The combination of <u>familiar elements</u> according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 1739 (emphasis added). Such combinations are likely to have been "obvious to try." *Id.* at 1742. The court should apply common sense and recognize that "<u>familiar items</u> may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* (emphasis added); *see also, Dystar Textilfarben GMBH & Co. v. C.H. Patrick Co.,* 464 F.3d 1356, 1364-70 (Fed. Cir. 2006) (if multiple references are relied upon to demonstrate obviousness, there should be articulated some reason for combining references, such as statements in the prior art, the knowledge of one of ordinary skill in the art, the nature of the problem to be solved, concepts implicit from the prior art as a whole, common knowledge, common sense, or in some cases, no evidence at all).

### D.     The Presumption of Patent Validity is Rebuttable

Although a patent is presumed valid according to 35 U.S.C. § 282, patents that are invalid due to anticipation and/or obviousness nevertheless frequently issue. The presumption of validity can be rebutted by a suitable factual showing. *Chore-Time Equipment, Inc. v. Cumberland*, 713 F.2d 774, 780 (Fed. Cir. 1983) (summary judgment of invalidity to due to obviousness); *Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985) (same). The burden of proof on the issue of invalidity rests upon the patent challenger and must be shown by clear and convincing evidence to overcome the presumption. *See, e.g., SSIH Equipment S.A. v. U.S. Int'l Trade*

*Commission*, 718 F.2d 365, 375 (Fed. Cir. 1983). Once the challengerhas presented sufficient evidence to make out a prima facie case by clear and convincing evidence, to avoid summary judgment the patentee must produce evidence adequate to create a triable issue of fact. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

### E. Level of Ordinary Skill in the Art

The parties have agreed by stipulation to four different definitions of the level of ordinary skill in the art. (*See* Thuma Decl., Exh. O.) Three of these definitions require at least a B.S. degree in engineering and several years of work experience.

## VI. THE COURT'S CLAIM CONSTRUCTION REFLECTS THE BROAD SCOPE OF THE CLAIMS, WHICH RENDERS THEM INVALID

On August 19, 2010, the Court issued a Claim Construction Order, as follows:

(a)   Drinking cap: a cap which, when screwed onto the beverage container, allows a person to drink the contents of the beverage container.

(b)   Drinking cap having a drinking hole: a cap which, when screwed onto the beverage container, allows a person to drink the contents of the beverage container through a hole in the cap.

(c)   Drinking hole: a hole in a drinking cap covering the beverage container, said hole being designed to allow the user to drink the contents of the beverage container while the cap is affixed atop the beverage container.

(d)   Closure member for selectively closing said drinking hole: a structure adapted to cover the drinking hole to an extent that the user may select, including fully open and fully closed, and which may allow the user to select a degree of opening somewhere between fully open and fully closed.

(e)   Open Top Portion: a portion of the container opposite the closed bottom portion of the container, said portion having an interface by which a cap screws onto the beverage container and an area that is not closed.

(f)   Second removable cover for selectively covering said open top portion: a cap that either allows the user to cover the drinking hole, through a mechanism such as a closure member to an extent that the user may select, including fully open and fully closed, and which may allow the user to select a degree of opening somewhere between fully open and fully closed; or a cap that may be screwed onto the beverage container by the user and which

covers some or all of the open top portion.

(*See* Thuma Decl., Exh. N, Claim Const. Order, Aug. 19, 2010, Docket Entry No. 159.) Applying these constructions to the asserted patents' claim elements necessarily encompasses the prior art of blender jars and drinking caps. Moreover, the broad construction of these everyday terms, sought by Sunbeam and granted by the Court, makes the combination of claim elements obvious in view of the numerous possible combinations of familiar prior art caps, with and without drinking holes.

## VII. THE MINI-BLEND® CONTAINER INSTRUCTIONS ANTICIPATE CLAIMS 4-8 AND 11-12 OF THE '592 PATENT

### A. The Disclosure of the Mini-Blend® Container Packaging and Instructions

The Mini-Blend® Packaging and Instructions, shown above, disclose a blender base, a blender container, a cap for the container and a blade base for interfacing the Mini-Blend container with the blender base. (Thuma Decl., ¶49; Exh. C, Figs 1-2, 5-6, 9.) The Mini-Blend container includes an external thread at the top of the container which allows the container to interface with the blade base or the container's cap. (*Id.* at ¶51, Exh. C, Figs 1-2, 5-6, 9-11, 14-15.) The blade base incorporates blender blades and is equipped with a lower portion configured to removably mate with the blender base and an upper portion having an internal screw thread for mating with (i.e. screwing onto) the Mini-Blend container. (*Id.* at ¶55, Exh. C, Figs 1-9, 12-13.) The cap of the Mini-Blend container likewise has an internal screw thread which mates with the external threads of the container. (*Id.* at ¶56, Exh. C, Figs 1-12, 14-15.) The internal screw threads on the blade base and the cap are the same. (*Id.* at ¶ 51, Exh. C, Figs. 1-2, 5-6, 9.) Therefore, the blade base and cap are interchangeably removable on the Mini-Blend container. (*Id.* at ¶ 51.) The Blend 'N Store™ container is depicted several times in the Mini-Blend Instructions, and thus all the above disclosures apply equally to the Blend 'N Store product. (*Id.* at ¶¶ 47, 48.)

**B.    The Mini-Blend Container Instructions Anticipate the Non-Drinking Cap Claims**

The non-drinking cap claims are claims 4-8 and 11-12 of the '592 patent. These claims are fully anticipated by the Mini-Blend container instructions. (Thuma Decl., ¶65.) A claim chart demonstrating the invalidity of each of these claims in view of the Mini-Blend container instructions is included in the Thuma declaration (*see* Thuma Decl., ¶65) and is incorporated herein by reference.

**1.    The Mini-Blend® Container Packaging and Instructions Anticipate Independent Claim 4 of the '592 Patent**

Independent claim 4 of the '592 patent is exemplary of the non-drinking cap claims and the patents-in-suits' broadest claim. Claim 4 recites three elements, a beverage container, a first cover and a second cover. The claimed beverage container has "an open top portion and a closed bottom portion." (Thuma Decl., ¶25.) The Mini-Blend® container is also a beverage container having an open top portion and closed bottom portion. (*Id*. at ¶50, Exh C, Figs 1-2, 5-6, 10-11, 14-15.)

The claimed first cover is adapted to be "removably mountable on and off a blender" and includes "an adapter portion for mounting said container on a blender." (Thuma Decl., ¶25.) The Mini-Blend blade base is a first cover in accordance with the claims because it is adapted to be removably mountable on and off the blender base of a prior art Oster blender and because it has an adapter portion for mounting to the blender container. (*Id*. at ¶55, Exh C, Figs 9, 13; ¶ 85 at claim 4.) The adapter portion of the blade base for mounting to the Mini-Blend container is an internal screw thread which mates with an external screw thread on the blender container. (*Id*.) This arrangement is identical that disclosed in the patents-in-suit Figure 19. (*Id*. at ¶55.)

The claimed second cover is a "removable cover" for covering the beverage container and comprises "a cap." The Mini-Blend container has a cap which is a removable cover for covering the mixer's beverage container. (*Id*. at ¶56, Exh C, Figs 1-9, 10-12, 14-15.) The Mini-Blend container cap is removably mountable to the beverage container because it has an internal thread that allows it

to screw on and off the container which has a mating external thread. (*Id.*) This arrangement is also identical to that disclosed by the patents-in-suit. (*Id.*) The Court's claim construction Order also specifically states that a second cover may be: "a cap that may be screwed onto the beverage container." (*See* Thuma Decl., Exh. N.) Therefore, the cap of the Mini-Blend container is a second cover in accordance with claim 4. Disclosing all of the elements of the claims, and being prior art, the Mini-Blend container Packaging and Instructions anticipate claim 4 of the '592 patent.

2.    **Detailed Application of the Mini-Blend® Packaging and Instructions to Claim 4 of the '592 Patent**

The following claim chart details pictorially how each element of claim 4 is disclosed by the Mini-Blend® container Packaging and Instructions. (*See* Thuma Decl., ¶65.)

| | | |
|---|---|---|
| 4. A beverage container assembly for use with a blender, comprising:<br><br>a beverage container having an open top portion and a closed bottom portion; |  | The Mini-Blend container is beverage container having an open top end and a closed bottom portion. (Thuma Decl., ¶65, Exh. C, Fig. 10.) |
| a first removable cover for selectively covering said top portion of said container, said first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender; | <br> | The blade base of the Mini-Blend Instructions is a first cover adapted to selectively cover the top portion of the container and is also adapted to be removably mountable on and off a blender. (Thuma Decl., ¶65, Exh. C, Figs. 1-2, 5-6, 9 and 13.) The lower portion of the blade base is configured to removably attach to the product's blender base and the upper portion of the blade base includes an internal thread which allows the blade base to screw onto the Mini-blend container. (*Id.*) |

| | | |
|---|---|---|
| and a second removable cover for selectively covering said open top portion of said container, said second cover comprising a cap, and |  | Per the Court's claim construction, a second cover is "a cap that may be screwed onto the beverage container by the user and covers some or all of the open top portion. (*See* Thuma Decl., Exh. N, Claim Constr. Order.) The flat or sealing cap of the Mini-Blend container meets this limitation of the claims and is therefore a second cover. (Thuma Decl., ¶65, Exh. C, Fig. 12.) |
| wherein said first and second covers are interchangeable on said container. |  | The blade base or first cover and the cap or second cover both screw onto the Mini-blend container. (Thuma Decl., ¶65, Exh. C, Figs. 1-2 and 5-6, 9.) Therefore they are interchangeable on the container. (*Id.*) |

## VIII.   THE KISS® MIXER ANTICIPATES THE NON-DRINKING CAP CLAIMS

The non-drinking cap claims, i.e. claims 4-8 and 11-12 of the '592 patent are also fully anticipated by the Kiss® Mixer. (Thuma Decl., ¶¶25-31.) A claim chart demonstrating the invalidity of each of these claims in view of the Kiss Mixer is included in the Thuma declaration (*see* Thuma Decl., ¶45) and is incorporated herein by reference.




### A.   The Kiss Mixer Anticipates Independent Claim 4 of the '592 Patent

Independent claim 4 recites three elements, a beverage container, a first cover and a second

cover. (Thuma Decl., ¶25.) The claimed beverage container has "an open top portion and a closed bottom portion," as does the blender container of the Kiss Mixer. (*Id.* at ¶27, Exh. D, Figs 1-3, 4.)

The claimed first cover is adapted to be "removably mountable on and off a blender" and includes "an adapter portion for mounting said container on a blender." (Thuma Decl., ¶25.) The Kiss Mixer's blade base is a first cover in accordance with the claims because it is adapted to be removably mountable on and off the Kiss Mixer blender base and because it is has an adapter portion for mounting to the blender container. (*Id.* at ¶28-29, Exh D, Figs 2-4, 7.) The adapter portion of the Kiss Mixer blade base is an internal screw thread that mates with an external screw thread on the blender container. (*Id.*) It is identical to the blade base disclosed in Figure 19 of the patents-in-suit.

The claimed second cover is a "removable cover" for covering the beverage container and comprises "a cap." The Kiss Mixer likewise features a cap which is a removable cover for covering the mixer's beverage container. (*Id.* at ¶30, Exh. D, Figs 2-3, 9, 11.) The Kiss Mixer cap is removably mountable to the beverage container because it has an internal thread that allows it to screw on and off the blender container's mating external thread. (*Id.*) This arrangement is also identical to that disclosed by the patents-in-suit. (*Id.*) The Court's claim construction Order also specifically states that a second cover may be: "a cap that may be screwed onto the beverage container." (*See* Thuma Decl., Exh. N.) Therefore, the cap of the Kiss Mixer is a second cover in accordance with claim 4. Possessing all of the elements of the claims, and being prior art, the Kiss Mixer anticipates claim 4 of the '592 patent.

B.    **Detailed Application of the Kiss Mixer to Claim 4 of the '592 Patent**

The following claim chart details pictorially how each element of claim 4 is disclosed by the prior art Kiss Mixer. (*See* Thuma Decl., ¶45.)

| 4. A beverage container assembly for use with a blender, comprising: | |
|---|---|

| | | |
|---|---|---|
| a beverage container having an open top portion and a closed bottom portion; |  | The Kiss Mixer features a blender or beverage container having an open top portion and a closed bottom portion. (Thuma Decl., ¶¶28, 45, Exh. D, Figs. 3, 4 and 10; Exh. E, paragraph 2, unnumbered page labeled "Name of Parts.") |
| a first removable cover for selectively covering said top portion of said container, said first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender; |  | The blade base of the Kiss Mixer is a first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender. (Thuma Decl., ¶¶29-30, 45; Exh. D, Figs. 4-8; Exh. E, unnumbered page labeled "Name of Parts.") The lower portion of the blade base is configured to removably attach to the product's blender base and the upper portion of the blade base includes an internal thread which allows the blade base to screw onto the product's blender container. (*Id.*) |
| and a second removable cover for selectively covering said open top portion of said container, said second cover comprising a cap, and |  | Per the Court's claim construction order, a second cover is "a cap that may be screwed onto the beverage container by the user and covers some or all of the open top portion. (Thuma Decl., Exh. N, Claim Constr. Order.) The flat or sealing cap of the Kiss Mixer meets this limitation of the claims and is therefore a second cover. (*Id.* ¶¶30, 45, Exh. D, Figs. 2-3, 9-11; Exh. E, unnumbered pages "Name of Parts" and "Constitution.") |
| wherein said first and second covers are interchangeable on said container. |   | The blade base or first cover and the cap or second cover both screw onto the blender container. (Thuma Decl., ¶ 45; Exh. D, Figs. 4-6 and 9-11) Therefore they are interchangeable on the container. (*Id.*) |

## IX. CAPS WITH DRINKING HOLES WERE WELL KNOWN BEFORE THE PRIORITY DATE OF THE ASSERTED PATENTS

The drinking cap claims recite nothing more than the elements of anticipated claim 4 of the '592 patent with the addition of a drinking cap in place of the ordinary cap. Caps with drinking holes, however, with and without closure tabs, were known in the art well before the priority date of the patents-in-suit. Four examples of the many available prior art drinking caps are discussed below:

### A. The Sadlier Cap Includes a Drinking Hole

U.S. Patent No. D417,845 to Sadlier ("the Sadlier patent"), issued December 21, 1999, over a year prior to the asserted patents' priority date. (*See* Thuma Decl., ¶35; Exh. F.)



As Mr. Thuma points out, the Sadlier cap is the very familiar design of the ubiquitous drinking caps typically used at fast food restaurants and coffee boutiques such as Starbucks. The cap snaps over a cup and includes a narrow slot for a drinking aperture. (Thuma Decl., ¶35.)

### B. The Demars Cap Includes a Drinking Hole and Closure Tab

U.S. Patent No. 4,899,902 to Demars ("the Demars patent"), issued on Feb. 13, 1990, over 11 years prior to the asserted patents' priority date. (*See* Thuma Decl., ¶36; Exh. G.) The Demars patent teaches that caps equipped with drinking holes and closure tabs were known in the art for at least a decade before the priority date of the patents-in-suit. (Thuma Decl., ¶36.)





The Demars patent also discusses five prior art drinking lids with drinking holes and closure mechanisms. (*Id.* at Exh. G, col. 1). Thus, over a decade before the asserted patents' priority date, the drinking cap art was already well-established.

### C.    The Ito Cap Includes a Drinking Hole, a Closure Tab, and Screw Threads

U.S. Patent No. 5,456,380, to Ito ("the Ito patent"), issued October 10, 1995, over five years before the asserted patents' priority date. (*See* Thuma Decl., ¶37; Exh. H.)



The Ito drinking cap is another, slightly more advanced, prior art cap with a drinking hole and a closure tab. Like the asserted drinking cap claims, the Ito cap discloses the use of screw threads to attach the drinking cap to a drinking container. (Thuma Decl., ¶37.) According to Ito, "[t]he cap 10 can be fitted to the drink container 30 by screwing the peripheral wall 12 thereof into the shoulder member 35 (of the container) or by any other means." (*Id.* at Exh. H, col. 2, lines 59-61.) Like the drinking cap claims, the Ito drinking cap also discloses a closure tab for the drinking opening. (*Id.*)

### D.    The Wang Cap Includes a Drinking Hole, a Closure Tab, and Screw Threads

U.S. Patent No. 6,010,029 to Wang discloses a drinking cap with a hole and a sophisticated closure mechanism. Like the asserted patents, the Wang cap also used screw threads to attach to a beverage container. (*See* Thuma Decl., ¶38; Exh. I, Figs. 1 and 2). The Wang patent issued on January 4, 2000, over a year prior to the asserted patents' priority date.





The Wang patent also disclosed and distinguished the prior art, which already incorporated a screw-on cap with a drinking hole and a closure mechanism. (*Id.* at Exh. I, col. 1, Figs. 5, 6.)

**E.    The Drinking Cap Claims of The Patents-In-Suit Are Obvious Because Combining a Blender Beverage Container and a Drinking Cap with a Drinking Hole Was Common Sense, Obvious to Try, and Yielded Predictable Results**

The drinking cap claims of the patents-in-suit comprise two groups, i.e. the apparatus claims and the method claims. The apparatus claims are claims 1-2 and 9-10 of the '592 patent and claims 1-9 of the '659 patent. Claim 1 of both the '592 and '659 patents are independent. Although each of these claims use slightly different terminology, they all recite the <u>same</u> combination of elements found in anticipated claim 4 of the '592 patent with the sole addition of a drinking cap, i.e. each claim recites the combination of a blender base, blender container, blade base and a drinking cap. (Thuma Decl., ¶32.) Certain of the dependent claims add features such as a closure tab.

Yet for all of those drinking cap claims, the patents' specifications contain no further description of such a cap, and there is nothing in the asserted patents' Figures that depict a "drinking hole" or a "closure tab." Such failure to include a claim element in the drawings violates the Patent Office Rules: "The drawing in a nonprovisional application must show every feature of the invention specified in the claims." 37 C.F.R. § 1.83; *see also* MPEP 608.02(d). The patent statute only requires "a drawing where necessary for the understanding of the subject matter sought to be patented." 35 U.S.C. § 113. Clearly the applicants did not think a drawing was "necessary" because inclusion of a drinking hole and closure tab was so easily understood by one of ordinary skill in the art without any illustration of that feature. Of course, such an omission strongly suggests that including such familiar features would have been obvious to an ordinarily skilled artisan.

Claim 3 of the '592 patent and claims 10-12 of the '659 patent are method claims. These claims simply recite the steps for using the blender base, blender container, blade base, and drinking

cap of above-mentioned apparatus claims—all of which are disclosed by both the Mini-Blend and Kiss Mixer, with the sole exception of supplying a drinking cap. (Thuma Decl. ¶¶33-34, 60-61.) All of the drinking cap claims are obvious over either then Mini-Blend or the Kiss Mixer and the drinking cap prior art, as demonstrated by the claim charts included in the Thuma Declaration, incorporated herein by reference. (Thuma Decl., ¶¶45-46, 65-66.)

The drinking caps of the Sadlier, Demars, Ito and Wang patents were but a few of the drinking caps available prior to the priority date of the patents-in-suit. Each of these caps served but one purpose—to close off the top portion of a beverage container leaving only a hole through which a person could drink. (Thuma Decl., ¶¶39, 62.) A person of ordinary skill in the art was surrounded by these drinking caps and would have encountered them frequently in his or her daily life as a consumer of convenience store products and fast food fare. Thus he or she would have readily understood that a drinking cap could be added with ease to both the Mini-Blend container and the Kiss Mixer blender container by simply <u>adding a hole</u> to the existing flat caps of those containers. (*Id.*) And as noted, these features were so well known in the art that the inventors did not even bother to depict these features in any of the asserted patents' Figures. The inventors apparently thought that such features were so obvious, that no additional disclosure was necessary other than a single reference of written words to an optional "drinking hole" and "closure tab."

In addition, it would have required only a routine application of engineering skill to size the Ito or Wang drinking cap to fit on the Mini-Blend or Kiss Mixer containers. (Thuma Decl., ¶¶40, 63.) The Wang and Ito drinking caps even taught the use of threads to attach a drinking cap to a drinking container, such as those used on the Mini-Blend and Kiss Mixer blender containers to attach their own caps. (*Id.*) A person of ordinary skill in the art needed only to match the threads of the Ito or Wang drinking caps to the Kiss Mixer or Mini-Blend containers, an entirely routine task. (*Id.*)

It would have further been obvious to add threading to the drinking caps of Sadlier or Demars to adapt them to the Mini-Blend or Kiss Mixer blender containers. (Thuma Decl., ¶¶41, 64.) The use of screw threads to attach parts is well known. A person of ordinary skill would have been taught the use of screw threads as part of his engineering curriculum. (*Id.*) Thus, a person of ordinary skill in the art would have readily understood that to mate the Sadlier or Demars drinking caps to the Mini-Blend container, the Blend 'N Store container, or the Kiss Mixer blender container, all that would have been needed was to add mating threads to the caps. (*Id.*)

The addition of a closure tab to the drinking cap would also have been obvious. (Thuma Decl., ¶¶42, 64.) If a closure tab was desired to seal off the drinking hole, a person of ordinary skill had only to look to the Demars, Ito, or Wang drinking caps for examples of various closure tab configurations. (*Id.*) No Figures in the asserted patents depict such closures, nor does the specification instruct how to build them, because they were so well known and obvious.

**F.    A Person of Ordinary Skill Would Have Had Ample Motivation to Make the Claimed Combination**

The combination of the Kiss® Mixer with any of the Sadlier, Demars, Ito or Wang drinking caps is an illustration of the teaching that "(w)hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR*, 550 U.S. at 417. Because the elements of the cited references are used in their familiar, predictable ways to achieve predictable results, a person of ordinary skill in the art would have had a reasonable expectation of success the combination. (Thuma Decl. ¶67.) At the very least, the combinations would have been obvious to try.

Also, not to be overlooked is perhaps the simplest solution, which would have been available to a person of ordinary skill who desired to add a drinking cap to either the Mini-Blend container or the Kiss Mixer. The solution of simply adding a hole to the flat cap of either product would have

25

been well within the reach of a person of ordinary skill.  (Thuma Decl., ¶¶39, 44, and 62.)  The conclusion is inescapable.  Punching a hole in the cap of a blender container or adding a drinking cap was an obvious and trivial combination of prior art elements that accomplished nothing more than would have been expected from such a combination.

Moreover, a person of ordinary skill would have been motivated to add a drinking hole to the Blend 'N Store cap.  In the Mini-Blend Instructions, Oster provided a number of suggested uses for the Blend 'N Store container, including the blending of alcoholic and ice cream drinks.  (Nielsen Decl. Exh. 9).  Both types of drinks would likely be consumed immediately rather than stored.  With ice cream drinks, their partly-frozen consistency cannot be maintained during storage in either the refrigerator or freezer, so they must be consumed immediately.  The same applies to blended alcoholic drinks, such as margaritas and daiquiris.  Many users, including bachelors who drink milk and orange juice straight from the container, have long been motivated to drink directly out of beverage containers.  This atavistic motivation is hardly inventive.  Rather it demonstrates the strong common sense motivation to adapt an existing prior art drinking cap to the Blend 'N Store container.  After all, the 30 oz. Blend 'N Store container is a single serving size, especially considering that the instructions advise only filling up the container to ¾ full (22.5 oz.).  (Thuma Decl. Exh. C, Figs. 2, 5).  If a user was blending drinks to pour into several separate glasses a group, they would be more likely to use the full-size 5-cup blender container that came with the Osterizer blender, rather than the Blend 'N Store container, which was a separate accessory, designed for a single user.

## G.    The Drinking Cap Claims are Obvious Over either the Mini-Blend Container or the Kiss® Mixer in View of the Kiss® Mixer Funnel Cap and/or Skill in the Art

Sold as an accessory for the Kiss® Mixer was an item called the "funnel cup," which included a cap with a drinking hole and a closure tab.  (Thuma Decl. ¶43, Exhs. K and L.)  The funnel cap of the Kiss Mixer featured a hole suitable for drinking.  (Thuma Decl. ¶43; Exh. L at

45:1-6.) Attached to the funnel cap was a closure tab for selectively closing the drinking hole. (*Id.* at ¶44.) The funnel cap of the Kiss Mixer was not interchangeable with a blade base on one of the mixer's standard blender containers. (*Id.*)  However, the flat cap of the Kiss Mixer was interchangeable with a blade base on the mixer's standard blender container. (*Id.*) Having these two caps side-by-side, a person of ordinary skill in the art would have readily understood that the drinking hole of the funnel cap could have been added to the flat cap to produce the drinking cap of the claims. (*Id.*) This would have required nothing more than a routine application of ordinary engineering skill. (*Id.*) Likewise, transferring the closure member of the funnel cap along with the drinking hole to the flat cap would have required nothing more than routine engineering skill. (*Id.*)

### H.  Detailed Application of the Prior Art to Claims 1 and 3 of the '592 Patent

Claim charts demonstrating the obviousness of each of the drinking cap claims over the Mini-Blend® container instructions and the Kiss® Mixer in view of the drinking cap prior art are included in the Thuma Declaration (¶¶45-46, 65-66) and are incorporated herein by reference.

### I.  Sunbeam's Weak Evidence of Secondary Considerations Cannot Overcome the Compelling Prima Facie Case of Obviousness

As set forth above, Alchemy has presented a very strong *prima facie* case of obviousness. Where, as here, a strong *prima facie* case of obviousness has been shown, even substantial evidence of secondary considerations of non-obviousness is inadequate to overcome a final conclusion of obviousness. *Asyst Technologies, Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

In response to the PTO's reexamination rejections of Sunbeam's claims based on obviousness, Sunbeam proffered certain evidence of secondary considerations. But the evidence cobbled together by Sunbeam failed to demonstrate any of the various elements of a  secondary considerations response. First, Sunbeam cannot demonstrate a connection between the patented

features and commercial success. *See, e.g., Asyst*, 544 F.3d at 1316 (evidence of commercial success must be linked to the features of the invention not disclosed in the prior art); *Wyers v. Master Lock Co.*, 95 USPQ2d 1525, 2010 U.S. App. LEXIS 15271, *34 (Fed. Cir. July 22, 2010) (the patentee must provide evidence establishing that sales were a direct result of the unique characteristics of the claimed invention). Second, the "praise of others" evidence was not connected to any of Sunbeam's patented features. Third, Sunbeam failed to demonstrate a long-felt but unmet need, because its evidence all significantly post-dated the patents' filing date. *See, e.g., Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) (a long-felt and unmet need must be shown to exist <u>on the date of the patent's filing</u>). Fourth, Sunbeam presented entirely inadequate evidence of copying, as it failed to produce any evidence that Homeland Housewares replicated Sunbeam's patented products. *See, e.g., Iron Grip Barbell Co., Inc. v. York Bar-Bell Co., Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("copying requires the replication of a specific product").

In summary, Alchemy's compelling *prima facie* case of obviousness cannot be overcome by Sunbeam's purported evidence of secondary considerations, because a common sense combination of familiar elements, that was obvious to try and which yielded the expected results simply is not an invention. Moreover, Sunbeam's evidence of secondary considerations is exceptionally weak—it does not even rise to the level of evidence that could overcome a marginal case of obviousness. Because Sunbeam cannot create a triable issue of fact through secondary considerations that can overcome an obviousness finding, summary judgment must be granted.

## X.    ALL OF THE CLAIMS ARE INVALID DUE TO THE ON-SALE BAR

A patent is subject to an on-sale bar if the thing sold by the critical date fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. *Ferag AG*, 45 F.3d at 1566. As discussed above, both the Kiss® Mixer and Sunbeam's own

Mini-Blend® and Blend 'N Store™ containers anticipate each and every non-drinking cap claim. All were the subject of actual sales of commercial embodiments over a year before the priority date. (Nielsen Decl. Exhs. 11-21; Larson Decl. ¶ 3(a)-(c), Exh. 1). In the case of the Mini-Blend® container, it was offered for sale and sold for over <u>thirty-five years</u> before the priority date.[4]

As also discussed above, the drinking cap claims are obvious in light of the Kiss Mixer and Mini-Blend in view of the various drinking cap patents. Although the relevant drinking cap prior art arose after the first sale of the Mini-Blend, it continued to sell as the drinking cap art developed. Thus, the Mini-Blend was "on-sale" at the time the relevant drinking cap art developed. Moreover, the drinking cap art was well-developed by the time the Kiss Mixer was first sold, and thus the Kiss Mixer "would have rendered the claimed invention obvious by its addition to the [drinking cap] prior art." *Ferag AG*, 45 F.3d at 1566. All of the patent claims are further invalid due to on-sale bar.

## XI.   CONCLUSION

For all of the above reasons, Alchemy's motion for summary judgment should be granted. The non-drinking cap claims, i.e. claims 4-8 and 11-12 of the '592 patent, are anticipated by both the Kiss Mixer and the Mini-Blend®/Blend 'N Store™ container instructions. The drinking cap claims, i.e. claims 1-3 and 9-10 of the '592 patent and claims 1-12 of the '659 patent, are simple, obvious, common sense combinations of either the Kiss Mixer or the Mini-Blend container instructions and the drinking cap prior art. Adding a hole to a cap cannot be viewed as inventive. Combining a cap with a hole in it with a blender beverage container is no more inventive. The claims are obvious because the patents-in-suit claim nothing more than a combination of a decades-old Mini-Blend®

---

[4] In fact, when renewing its Mini-Blend® trademark in December 2006, Sunbeam asserted it was still offering the Mini-Blend for sale (Nielsen Decl. 15, Exh. 1), which was five years after the priority date, and nearly three years after the '592 application was filed. Yet Sunbeam never disclosed the Mini-Blend container to the PTO during prosecution of the '592 application.

blender container assembly and a prior art drinking cap. The prior art components are familiar—indeed they are iconic household items—that perform the same function in the same way they have always been known to perform and when combined yield no more than one would expect from such an arrangement. Therefore, there is no reason why a person of ordinary skill in the art would have anything but a reasonable expectation of success in combining the cited references, i.e., punching a hole in a cap, or combining a cap with a whole to the beverage container, because caps with holes for drinking were commonplace for beverage containers.

Indeed, it is difficult to imagine how the combination of known elements in the gas pedal assembly at issue in *KSR* could be obvious as a matter of law (regardless of secondary considerations), yet here it was not obvious as a matter of law to combine two familiar consumer staples—drinking caps and single serving blender beverage containers. The law treats similar things similarly. This is a *KSR* type case of obviousness. The on-sale bar also invalidates all the claims, because the Mini-Blend, Blend 'N Store, and Kiss Mixer each anticipate the non-drinking cap claims, and render the drinking cap claims obvious in view of the drinking cap prior art. The Motion for summary judgment of invalidity should be granted as to all claims.

Alchemy Worldwide, LLC
By Counsel:


    /s/ Robert E. Scully, Jr.
Robert E. Scully, Jr. (Virginia Bar No. 19218)
Stites & Harbison PLLC
1199 North Fairfax Street, Suite 900
Alexandria, Virginia 22314
Telephone: (703) 739-4900
Fax: (703) 739-9577
rscully@stites.com
*Counsel for Defendant Alchemy Worldwide, LLC*

Of Counsel for Defendant Alchemy Worldwide, LLC
    Daniel M. Cislo (*pro hac vice*)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of September, 2010, a true and correct

copy of the foregoing pleading or paper was served using the Court's CM/ECF system with

electronic notification of such filing to the following counsel of record:

David J. Prieto
Richard S. Taffet
Boyd T. Cloern
Elizabeth B. Austern
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Fax: (202) 373-6001
*David.prieto@bingham.com*
*richard.taffet@bingham.com*
*boyd.cloern@bingham.com*
*Elizabeth.austern@bingham.com*


/s/ Robert E. Scully, Jr.
Robert E. Scully, Jr. (VSB # 19218)
Stites & Harbison PLLC
1199 North Fairfax Street, Suite 900
Alexandria, Virginia 22314
Telephone: (703) 739-4900
Fax: (703) 739-9577
rscully@stites.com
*Counsel for Defendant Homeland Housewares,
LLC, Alchemy Worldwide, LLC, and Alchemy
Worldwide, Inc.*

181587:1:ALEXANDRIA