# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS, | |
| Plaintiff, | |
| | Civil Action No. 3:09cv791 REP |
| v. | |
| HAMILTON BEACH BRANDS, INC., ET AL., | |
| Defendants. | |

## DECLARATION OF MICHAEL THUMA IN SUPPORT OF ALCHEMY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF SUNBEAM'S PATENTS–IN-SUIT

I, Michael M. Thuma, declare as follows:

1.  I have been involved in product development and new product innovation for over 20 years, serving in various positions in both the corporate and consulting settings.  I have been involved with both large and small consulting firms and worked with a wide range of clients in areas ranging from house wares, kitchen appliances, toys, electronics, automotive, medical and industrial equipment.  I have designed, developed and managed all aspects of the product development process including research, design, engineering, packaging, graphics, merchandising, manufacturing and quality control.  I have been part of numerous cases involving utility and design patent infringement as well as trade dress.  I am a named inventor on over 50 design and utility patents, including utility patents specifically for blending products.  My formal education includes a Bachelors of Fine Arts in Industrial Design from University of Illinois, Chicago, a Masters of Science in Product Development from Northwestern University and many years of industry-related seminars and management training. Additionally, based on my background and experience derived from having spent many years developing products, I

understand the techniques and motivations within product development that lead to new iterations of products from previous designs.

2.     Presently, I am the Director of New Product Development and Innovation at Suncast Corporation.  In this position, I am responsible for identifying and developing new product and category opportunities for the company as well as managing the day to day product development and brand development activities. I have held similar corporate positions at Body Solid Inc. a fitness equipment manufacturer and distributor, Lava World International and Home Products International.

3.     I was retained by Homeland and Alchemy to conduct a validity analysis of the patents-in-suit, i.e. U.S. Patent No. 6,758,592 ("the '592 patent") and U.S. Patent No. 7,520, 659 ("the '659 patent").  It is my understanding that my report containing my analysis and conclusions that all claims of the patents-in-suit are invalid in view of the prior art was submitted to Plaintiff Sunbeam Products, Inc. ("Sunbeam") on June 25, 2010.

4.     My expert report analyzed the validity of the patents-in-suit in view of many different combinations of prior art references and included an appendix of approximately 2532 pages.  In view of the length of my previous report, for the Court's and the parties' convenience, I submit this separate declaration which addresses only the invalidity contentions that are specifically addressed in Alchemy's motion.

## The Patents-In-Suit

5.     The '592 and '659 patents both claim priority through a chain of patents to a single prior application, i.e. U.S. Application No. 09/835,118 which was filed on April 13, 2001. Thus, both patents have the same priority date of April 13, 2001. A true and correct copy of the '592 patent is appended hereto as Exhibit "A." A true and correct copy of the '659 patent is appended hereto as Exhibit "B."

6.     A review of the patents reveals that the specifications are essentially the same and that the patents have similar claims. The drawing figures of the two patents appear to be identical. I would note that the '659 patent is subject to a terminal disclaimer which I understand to mean that the Patent Office found the invention claimed in the '659 patent to be patentably indistinct from that of the '592 patent. For this reason, the patentee was required to limit the term of the later-filed '659 patent to that of the earlier-filed '592 patent.

7.     Figure 19 of the patents-in-suit, reproduced below, illustrates the above-referenced components of the claimed blender assembly. As mentioned previously, both patents use identical drawing figures.



FIG. 19

Blender Container (38)

Purportedly Novel External Screw Thread (196) on blender container

Purportedly Novel Internal Screw Thread (192) on agitator collar

Collar (190)

Blender Base (32)

8.     As shown above, the patents-in-suit disclose and claim a blender or beverage container 38 having an open top end and a closed bottom end, and an external thread at the container's open top end. The patents-in-suit also claim a collar or blade base 190 containing blender blades. The collar or blade base has a lower portion configured to mate with the blender base 32 (*see* Exh. A, '592 patent, col. 11, lines 3-16; Exh. B, '659 patent, col. 10, lines 61 – col. 11, line 6) and an upper portion containing an internal screw thread 192 which is configured to mate with an external screw thread 196 on the beverage container 38 in which blending takes place. (*See* Exh. A, '592 patent, col. 11, lines 33-38; Exh. B, '659 patent, col. 11, lines 24-28.)

9.     In combination with the above-referenced elements, claims 4-8 and 10-12 of the '592 patent (i.e. the non-drinking cap claims) claim simply a cap for the beverage or blender container. No drawing figure depicting the appearance of the generic cap is to be found in the patents-in-suit. However, since the claims require that the cap be removably attachable to the blender container, I assume the intended cap has an internal thread to mate with the external thread of the blender container. Also, neither a drinking hole nor closure mechanism for the

4

drinking hole was depicted in the patents' figures. Since all of these features are not novel or are clearly obvious, they were not even accurately depicted in the figures. I understand that Patent Office rules require that a patent for a mechanical invention show all of the claimed elements in the figures. MPEP § 608.02(d).

10.    Claims 1-3 and 9-10 of the '592 patent and claims 1-12 of the '659 patent ("the drinking cap claims") substitute a drinking cap in place of the generic cap of the non-drinking cap claims. The claimed drinking cap is shown only in Figure 2 of the patents and then, only in profile. Figure 2 of the patents-in-suit is reproduced below:



The alleged drinking cap 198 of the patents-in-suit includes an internal screw thread identical to that of the blade base or collar 190 so that the drinking cap can be interchangeably screwed onto the external thread 196 of the beverage or blender container 38 in which blending occurs. (*See* Exhs. A and B, Fig. 2 of each; and, Exh. A, col. 11, lines 42-43; Exh. B, col. 11, lines 32-33.)("A removable cap 198 is provided that may be screwed onto the male threads 196.").

11.    The claims of the patents-in-suit also require that the blade base or collar and drinking cap be interchangeable on the beverage or blender container. That is both the blade base and cap must be capable of attaching to the beverage or blender container with the same

interface. The interface disclosed by Figure 19 of the patents, as mentioned previously, is a

screw thread. In my opinion, this claimed feature is not a matter of innovative design, but one of

necessity in order to maintain a leak proof seal between the cap and blender or beverage

container. The beverage or blender container of the patents-in-suit includes at its upper end an

external thread to which the blade base and cap screw on. To screw onto, i.e. interface with, the

external thread of the beverage or blender container, both the blade base and cap must of

necessity have the same mating internal thread.


12.     I am advised that on August 19, 2010, the Court issued an Order construing the

disputed claim terms of the patents-in-suit as follows:

(a)     <u>Drinking cap</u>:  a cap which, when screwed onto the beverage container, allows a
person to drink the contents of the beverage container.

(b)     <u>Drinking cap having a drinking hole</u>:  a cap which, when screwed onto the
beverage container, allows a person to drink the contents of the beverage container
through a hole in the cap.

(c)     <u>Drinking hole</u>: a hole in a drinking cap covering the beverage container, said hole
being designed to allow the user to drink the contents of the beverage container while the
cap is affixed atop the beverage container.

(d)     <u>Closure member for selectively closing said drinking hole</u>: a structure adapted to
cover the drinking hole to an extent that the user may select, including fully open and
fully closed, and which may allow the user to select a degree of opening somewhere
between fully open and fully closed.

(e)     <u>Open Top Portion</u>: a portion of the container opposite the closed bottom portion
of the container, said portion having an interface by which a cap screws onto the beverage
container and an area that is not closed.

(f)     <u>Second removable cover for selectively covering said open top portion</u>:  a cap that
either allows the user to cover the drinking hole, through a mechanism such as a closure
member to an extent that the user may select, including fully open and fully closed, and
which may allow the user to select a degree of opening somewhere between fully open
and fully closed; or a cap that may be screwed onto the beverage container by the user and
which covers some or all of the open top portion.

Attached hereto as Exhibit "N" is a true and correct copy of the Court's Claim Construction Order dated September 19, 2010.

## Standards for Anticipation and Obviousness

13. I understand that a patent claim is anticipated by the prior art if every limitation of the claim is found in a single prior art reference, either explicitly or inherently. To qualify as anticipatory prior art, a patent, printed publication, or device must have been published, on-sale, or publicly known prior to the conception date of the claimed invention, or more than one year before the filing date of the application for the patent.

14. It is my understanding that a claim is obvious if, at the time the invention was made, the combined teachings of the prior art, taken as a whole, would have rendered the claimed invention obvious to one of ordinary skill in the art. The scope and content of the prior art, the level of ordinary skill in the art at the time of the invention, and the differences between the claimed invention and the prior art are all considered. I understand that there is no requirement to find precise teachings directed to the specific subject matter of a claim; instead, common sense, inference, and creative steps that a person of ordinary skill in the art would employ should be taken into account, as should market forces

15. I am advised that the parties have agreed by stipulation to four different definitions of the level of ordinary skill in the art. A true and correct copy of the Parties' Stipulation as to the level of ordinary skill in the art is attached hereto as Exhibit "O." Three of

these definitions require at least a Bachelor of Science degree in Mechanical Engineering or "Materials Science and Engineering" and several years of work experience. Based upon my education and experience, I am at least of a person of ordinary skill in the art.

### Description of the Kiss Mixer

16.     Attached hereto as Exhibit "D" are 11 photographs of the Kiss Mixer and the product's packaging. The photographs are identified as Figures 1 to 11. Attached hereto as Exhibit "E" is a true and correct copy of the Kiss Mixer Instruction Manual. I have also physically inspected the Kiss Mixer product.

17.     The Kiss Mixer is a kitchen blender having a blender base (Exh. D, Figs. 1-3 and 12), blender containers (Exh. D, Figs. 1-3, 4 and 10), caps for the blender containers (Exh. D, Figs. 2-3 and 9 and 11), and blade bases for interfacing the blender containers with the blender base. (Exh. D, Figs. 1-3, 4-7.)

18.     The blender base of the Kiss Mixer includes a drive motor. (Exh. D, Figs. 4-7 and 10.)

19.     Each blender container has an open top and a closed bottom end and includes an external thread at the top of the container which allows the container to interface with a blade base. (Exh. D, Fig. 10.)

20.     The blade base incorporates blender blades and is equipped with a coupling to

mate with the drive mechanism in the blender base and is removably mountable on and off the blender. (Exh. D, Fig. 6.) An upper portion of each blade base has an internal screw thread configured to mate with external screw threads on the blender containers. (Exh. D, Figs. 4 and 7.)

21.     The caps for the blender containers likewise have internal screw threads (Exh. D, Figs. 2-3, 9 and 11) that mate with the external threads of the containers. The internal screw threads on the blade bases and caps are the same. (Exh. D, Fig. 6.) Therefore, the blade bases and caps are interchangeably removable on the blender cups.

22.     The Kiss Mixer and its component parts are shown below:

**Component Parts of the Kiss Mixer**



| | |
|---|---|
|  |  |
| The blender base of the Kiss Mixer (shown above) contains a drive motor and is otherwise conceptually identical to the claimed blender base of the '592 and '659 patents. (*See* Figure 19 of the patents-in-suit reproduced above at para. 7.) | The blender container of the Kiss Mixer (shown above) features a closed bottom end and an open top end with an external thread or first interface at its open top end and is conceptually identical to the claimed blender of the '592 and '659 patents. (*See* Figure 19 of the patents-in-suit reproduced above at para. 7.) |

 

| | |
|---|---|
| As shown, the blade base of the Kiss Mixer features blender blades. The bottom portion of the collar interfaces with the blender base and the inside top portion contains an internal thread or interface for interfacing with the external thread of the blender container and is conceptually identical to the claimed blade base or collar of the '592 patent. (See Figure 19 of the patents-in-suit reproduced above at para. 7.) | The blender cap of the Kiss Mixer includes an internal thread for interfacing with the external thread or interface of the blender jar, i.e. the cap screws onto the jar just like the claimed drinking cap of the '592 and '659 patents. |

23.     Attached hereto as Exhibit "L" are true and copies of the pages of the June 2, 2010 deposition transcript of the deposition of Seung Wee Yang referenced in this declaration. A page before and after each cited page is included for context. Mr. Yang testified that: the Kiss Mixer was developed in South Korea in 1999 (Exh. L, 28:20-29:5); was first advertized in the United States in 1999 (*see* Exh. L, 12:16-19); and, was first sold in the United States later in 1999. (Exh. L, 26:13-18.) Previously, in 2004, Mr. Yang testified that no changes had been made to the Kiss Mixer that affected exterior appearance other than color. (*See* Exhibit U, ¶5.)

24.     Attached hereto as Exhibit "M" are true and copies of the pages of the June 3, 2010 deposition of Julian Suk referenced in this declaration. Per the records of the Korea Times, the Kiss Mixer was advertized in that newspaper in the United States from at least as early as December 12, 1999. (Exh. M, Suk Decl. 16:1-6.) Therefore, the Kiss Mixer predates the April 13, 2001 priority date for the patents-in-suit by at least one year, and is therefore prior art.

## Invalidity of the Patents-in-Suit In View of the Kiss Mixer

25.     Independent claim 4 of the '592 patent recites for use on a blender: a beverage

container having an open top portion and a closed bottom portion; a first removable cover adapted to be removably mountable on and off a blender and adapted to mount the beverage container to a blender base; a second removable cover, said cover comprising a cap; wherein said first and second covers are interchangeable on the beverage container. (*See* Exh. A, '592 patent, col. 20, lines 51-63.)

26.     The blender/beverage container, first cover or blade base or collar, and second cover or cap each include an interface. The interface disclosed in the specification and Figures 2 and 19 of the patents-in-suit is a screw thread. (*See* Exh. A, col. 11, lines 33-45; Fig. 19.)

27.     The Kiss Mixer discloses a blender container having a closed bottom end and an open top end, the open top end having an external thread or interface (Exh. D., Figs. 1-3, 4 and 10).

28.     The Kiss Mixer discloses a blade base having a lower portion adapted to be removably mountable on and off a blender (i.e. blender base). The blade base of the Kiss Mixer also has an upper portion which features an internal thread for mating with the external thread on the blender container (Exh. D, Figs. 2-4 and 7). This arrangement is identical that disclosed in Figure 19 of the patents-in-suit.

29.     The blade base of the Kiss Mixer is a first cover in accordance with the claims 4-8 and 10-12 of the '592 patent because it is adapted to be removably mountable on and off the blender base of the Kiss Mixer and because it is has an adapter portion, i.e. internal thread, for

mounting to the blender container.

30.     The Kiss Mixer discloses a cap which features an internal thread or interface for mating with the blender container. (Exh. D, Figs. 2-3 and 9-11.) The cap of the Kiss Mixer is removably mountable to the beverage container because its internal thread allows it to screw on and off the blender container which has a mating external thread. This arrangement is identical to that disclosed by the patents-in-suit.

31.     As shown in paragraphs 26 through 30, the Kiss Mixer discloses all of the elements of claim 4 of the '592 patent, and being prior art, the Kiss Mixer therefore anticipates claim 4 of the '592 patent.

32.     Claims 1-2 and 9-10 of the '592 patent and claims 1-9 of the '659 patent are apparatus claims. It is my understanding that an apparatus claim is a claim that describes equipment. Each independent apparatus claim, i.e. claim 1 of the '592 patent and claim 1 of the '659 patent, using slightly different terminology, recites the combination of a blender base; a drinking container or blender container; a blade base or collar; and, a drinking cap. (*See* Exh. A, '592 patent, claim 1; Exh. B, '659 patent, claim 1.) Other than the drinking cap, these elements are essentially the same as those recited in claim 4 of the '592 patent.

33.     Independent claim 3 of the '592 patent and claims 10-12 of the '659 patent are method claims. These claims recite nothing more than the steps for using the blender base, blender container, blade base, and drinking cap recited in the apparatus claims. These claims

recite the following steps: placing ingredients in a blender container, attaching the blade base to the blender container, inverting the container and blade base and putting them on the blender base, blending the ingredients, removing the blender container and blade base from the blender base, removing the blade base from the blender container and attaching a drinking cap to the blender container. (*See* Exh. A, '592 patent, claim 3; Exh. B, '659 patent, claim 10.)

34. The Kiss Mixer discloses all of the above steps either directly or inherently, with the exception of attaching a drinking cap. Exh. D, Fig. 1 and Exh. E, unnumbered page entitled "Name of Parts" show the Kiss Mixer container inverted on a blender base. (Exh. D, Fig. 1; Exh. E.) The instructions specifically describe the steps of attaching the blade base to the container and putting the container and blade base on the blender base for blending. (Exh. E, ¶¶1-8.) It is inherent in the use of the Kiss Mixer that to access the contents of the blender container after blending, a user must first remove the container from the blade base. It is also inherent that the container must be re-inverted, i.e. placed in an upright position, in order to remove the blade base and thus gain access to the blended contents. The only step missing from the Kiss Mixer's instructions is the step of attaching a drinking cap to the container. The Kiss Mixer at least inherently discloses attaching a cap to the blender container, as set forth above in ¶30.

35. Attached hereto as Exhibit "F" is a true and correct copy of U.S. Patent No. Des. 417,845 entitled "LID FOR DRINKING CUP," which issued to Sadlier ("the Sadlier patent") on December 21, 1999. The drinking cap disclosed by the Sadlier patent is shown below.



Fig. 1          Fig. 2

The Sadlier cap is typical of the many drinking caps typically used at fast food restaurants and coffee boutiques such as Starbucks. The cap snaps over a cup and includes a narrow slot for a drinking aperture.

36.     Attached hereto as Exhibit "G" is a true and correct copy of U.S. Patent No. 4,899,902 entitled "NO SPILL LID" which issued to Demars ("the Demars patent") on Feb. 13, 1990. The drinking cap disclosed by the Demars patent is shown below.



Fig. 1.

The Demars cap is pertinent because it teaches that closure tabs for drinking holes in drinking caps were known in the art prior to the priority date of the patents-in-suit.

37.     Attached hereto as Exhibit "H" is a true and correct copy of U.S. Patent No. 5,456,380 entitled "CAPS FOR DRINK CONTAINERS" which issued to Ito ("the Ito patent"),

15

on October 10, 1995. The drinking cap disclosed by the Ito patent is shown below.



The Ito cap is pertinent because it teaches the use of screw threads to attach the drinking cap to a drinking container. Per Ito, "[t]he cap 10 can be fitted to the drink container 30 by screwing the peripheral wall 12 thereof into the shoulder member 35 (of the container) or by any other means." (*See* Exh. G, col. 2, lines 59-61.) The Ito drinking cap also discloses a drinking aperture in the form of a U-shaped opening and further includes a closure tab.

38.     Attached hereto as Exhibit "I" is a true and correct copy of U.S. Patent No. 6,010,029 entitled "CONTAINER LID ASSEMBLY" which issued to Wang on January 4, 2000. Each of the aforementioned patents discloses a drinking cap. The Wang drinking cap is also pertinent because it also teaches the use of screw threads to attach a drinking cap to a blender container. (*See* Exh. I, Figs. 5 and 6.) Wang also teaches a drinking hole and a closure mechanism for the same. (*See* Exh. I, Fig. 1.)

39.     Each of the Sadlier, Demars, Ito, and Wang drinking caps served to close off a cup leaving only a hole through which a person could drink. In my opinion, a person of ordinary skill in the art being surrounded by these drinking caps would have readily understood that a drinking

cap could be added to the Kiss Mixer by simply adding a drinking hole to the existing cap for the mixer's blender container. It is my understanding that the hypothetical person of ordinary skill in the art is aware of all pertinent prior art.

40.     Alternatively, I believe it would have been a routine application of engineering skill to scale the drinking cap of Ito or Wang up or down as needed to fit on a Kiss Mixer blender container. The Wang and Ito drinking caps taught the use a threaded interface to attach a drinking cap to a drinking container. Like the Wang and Ito caps, the Kiss Mixer blender container also used a threaded interface to attach its flat cap to the container. (Exh. D, Figs. 9-11.) Therefore, it would have been obvious to adapt the drinking caps of Ito or Wang to fit the blender container of the Kiss Mixer.

41.     In my view, it would have further been obvious to add a screw thread to the drinking caps of Sadlier or Demars to adapt them to the Kiss Mixer blender container. The use of screw threads to attach parts together would have been known to a person of ordinary skill. The use of threaded connections is well known and to the best of my knowledge routinely taught as part of an engineering curriculum, and if not, a person of ordinary skill would certainly have learned the use of screw threads to create a leak proof connection in his early years of on-the-job experience. Thus, a person of ordinary skill in the art would have readily understood that to mate the drinking caps of Sadlier or Demars to the Kiss Mixer blender container, all that needed to be done was add an appropriately sized mating screw thread to the caps.

42.     In my opinion, the addition of a closure tab to seal off the drinking hole of the

drinking cap when the drinking container was not in use would also have been obvious to a person of ordinary skill in the art because such an individual had only to look to the Demars, Ito, or Wang drinking caps for examples of various closure tab configurations. The combination of these elements are also obvious in light of the fact that the size of the drinking caps and containers described in the Ito, Sadlier and Demars patents and the drink container used on the Kiss Mixer is similar to those sized for use in an automobile whose tops include an open or closable drinking hole.

43.     The U.S. importer of the Kiss Mixer, Mr. Yang, testified that in 2000 he began distributing a Kiss Mixer accessory called the "funnel cap." (Exh. L, 45:17-19.) Per Mr. Yang, the funnel cap was suitable for drinking. (Exh. L, 45:1-6.) The caps were given away as gifts (Exh. L, 45:9-11), offered for sale on the Kiss Mixer website (Exh. L, 45:9-11), and were included with a deluxe version of the product. (Exh. L, 45:25-46:8.) Exhibit "K" appended hereto is a photograph of the funnel cap of the Kiss Mixer and its corresponding cup. (Exhibit K was located on www.archive.org at: http://webarchive.org/web/2001071507552/www.kissmixer.com/html/order.html.) From inspection of the photograph, the funnel cap was included with a blender container of different design than that of the standard Kiss Mixer blender container. It appears that the Kiss Mixer blade base would attach to the small end of the cup while the funnel cap attached to the large end of the cup.

 Per the inventor of the Kiss Mixer, the funnel cup included a cap featuring a hole which was suitable for drinking. (Exh. K, 45:1-6.) The funnel cup cap also featured a closure tab.

44.     From inspection, attached to the funnel cap is a closure tab for selectively closing the drinking hole.  The funnel cap of the Kiss Mixer does not appear to have been interchangeable with a blade base on one of the mixer's standard blender containers.  However, the flat cap of the Kiss Mixer was interchangeable with a blade base on the mixer's standard blender container.  In my opinion, having these two caps side-by-side, a person of ordinary skill in the art would have readily understood that the drinking hole of the funnel cap could have been added to the flat cap to produce the drinking cap of the claims.  This would have required nothing more than a routine application of ordinary engineering or design skill.  Likewise, transferring the closure member of the funnel cap along with the drinking hole to the flat cap would have required nothing more than routine engineering skill and therefore such a combination is not the result of novel and non-obvious innovation.

45.     In the following paragraph are claim charts that apply the above-discussed prior art to each element of each claim of the '592 patent and therefore demonstrate the invalidity of each claim of the patent.  As mentioned previously, in my opinion, claims 4-8 and 11-12 are anticipated by the Kiss Mixer.  The Kiss Mixer discloses all of the elements of claims 1-3 and 9-

10 with the exception of the drinking cap. In my opinion, these claims are obvious in view of the Kiss Mixer and the Sadlier or Demars, or Ito or Wang drinking cap patents, or the funnel cap of the Kiss Mixer, or simply ordinary skill in the art.

| Application of the Kiss Mixer and the Drinking Cap Prior Art to the Claims of the '592 Patent | | |
|---|---|---|
| 1. A container assembly for use with a blender blade base, comprising: | | |
| a drinking container having a first interface at its top; |  | The Kiss Mixer includes a drinking container having a first (threaded) interface at its top. (*See* Exh. D, Fig. 4; Exh. E, ¶¶2 and 6 and the unnumbered page entitled "Name of Parts".) |
| a blade base removably mountable on and off a blender and having a blade unit thereon and a second interface thereon, the second interface configured to mate with the first interface, the blade base and the drinking container forming a sealed container; and |  | The Kiss Mixer includes a blade base which is removably mountable on and off a blender and which includes a blade assembly. (Exh. D, Figs. 3-4 and 7; Exh. E, ¶¶2-4 and the unnumbered page labeled "Name of Parts".) The blade base has an internal thread or second interface configured to mate with the external thread or first interface of the blender container. The blade base when attached to the drinking container forms a sealed container. |

| | |
|---|---|
| a drinking cap having a drinking hole and a third interface, the third interface configured to mate with the first interface. |  The flat cap of the Kiss Mixer is a cap having a third interface (an internal thread) configured to mate with the first interface (i.e. external thread of the blender container).<br><br>It would have been obvious to add a hole to the cap of the Kiss Mixer blender container to create the drinking cap of claim 1 of the '592 patent.<br><br>Alternatively, it would been equally obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the blender container of the Kiss Mixer.<br><br>It would have also been obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Kiss Mixer's blender container.<br><br>Any of these modifications would have been immediately successful and would have produced the combination of claim 1 of the '592 patent. |
| 2. The container of claim 1, | |
| wherein the drinking container comprises a closed bottom that is opposite the top. | Exh. D, Figs. 3-4 and 10 show a beverage container having an open top portion and a closed bottom portion. Exh. E, paragraph 2 and page labeled "Name of Parts" show the same. |
| 3. A method of mixing ingredients in a drinking container, comprising: | |

| | | |
|---|---|---|
| placing ingredients in a drinking container; |  | The Kiss Mixer includes containers suitable for drinking and into which ingredients may be placed. (Exh. D, Figs. 2-3.) The Kiss Mixer instruction manual describes putting ingredients into the drinking vessel. (Exh. E, ¶1.) |
| attaching a blade base to the drinking container; |  | The Kiss Mixer includes a blade base for a attaching a drinking container to the blender base. (Exh. D, Figs. 3-4.) Exh. D, Fig. 5 shows a collar or blade base mounted to a drinking container. The Kiss Mixer instructions describe the process of attaching a blade base to a blender container. (Exh. E, ¶2.) |
| inverting the blade base and drinking container; |  | The Kiss Mixer includes a blade unit removably attachable to a blender container. The blade base and container are intended to be inverted for attachment to a blender base. (Exh. D, Fig. 5.) The Kiss Mixer instructions describe the process of inverting the blade base and drinking |

container. (Exh. E, ¶3.)

| | |
|---|---|
| attaching the blade base to a motorized blender base and operating the blender base to mix the ingredients in the drinking container; |  The Kiss Mixer instructions describe the process of attaching the inverted blade base and drinking container to a blender base. (Exh. E, ¶3.) The instructions describe the process of operating the blender to mix ingredients. (Exh. E, ¶4.) |
| removing the blade base and drinking container from the blender base; | The Kiss Mixer instructions describe removing the blade unit and drinking container from the blender base. (Exh. E, ¶4.) It is inherent that to access the blended contents in the container, a user would have to remove the blade unit and container from the blender base. |
| inverting the blade base and drinking container; |  The Kiss Mixer instructions describe putting ingredients into the drinking container and attaching a blade unit to the container and inverting the blade unit and container and attaching it to the blender base. (Exh. E, ¶¶1-4.) In order to access the blended contents in the container, it is inherent that a user would have to re-invert the blade unit and container assembly prior to removing blade unit from the open top of container. Otherwise, the blended contents of container would spill out upon removal of blade unit from container. |

| | | |
|---|---|---|
| removing the blade base from the drinking container; and |  | It is inherent that to access the blended materials in the container, one would have to remove the blade unit from container. |
| attaching a drinking cap to the top of the drinking container. | | The Kiss Mixer includes a cap which threads onto the mixer's blender container. (Exh. D, Figs. 2-3, 9 and 11; Exh. E, unnumbered page labeled "Name of Parts.")<br><br>It would have been obvious to a person of ordinary skill to add a hole |

to the cap of the Kiss Mixer blender container to create the drinking cap of claim 3 of the '592 patent. (Id.)

Alternatively, it would been equally obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the blender container of the Kiss Mixer. (Id.)

It would have also been obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Kiss Mixer's blender container. (Id.)

Any of these modifications would have been immediately successful and would have produced the combination of claim 3 of the '592 patent. (Id.)

| | |
|---|---|
| 4. A beverage container assembly for use with a blender, comprising: | |

| | |
|---|---|
| a beverage container having an open top portion and a closed bottom portion; |  The Kiss Mixer features a blender or beverage container having an open top portion and a closed bottom portion. (Exh. D, Figs. 3, 4 and 10; Exh. E, paragraph 2, unnumbered page labeled "Name of Parts.") |
| a first removable cover for selectively covering said top portion of said container, said first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender; |  The blade base of the Kiss Mixer is a first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender. (Exh. D, Figs. 4-8; Exh. E, unnumbered page labeled "Name of Parts.") The lower portion of the blade base is configured to removably attach to the product's blender base and the upper portion of the blade base includes an internal thread which allows the blade base to screw onto the product's blender container. |

| | |
|---|---|
| and a second removable cover for selectively covering said open top portion of said container, said second cover comprising a cap, and |  Per the Court's claim construction order, a second cover is "a cap that may be screwed onto the beverage container by the user and covers some or all of the open top portion. (Exh. N, i.e. Claim Construction Order.)<br><br>The flat or sealing cap of the Kiss Mixer meets this limitation of the claims and is therefore a second cover. (Exh. D, Figs. 2-3 and 9-11; Exh. E, unnumbered pages entitled "Name of Parts" and "Constitution.") |
| wherein said first and second covers are interchangeable on said container. |  The blade base or first cover and the cap or second cover both screw onto the blender container. (Exh. D, Figs. 4-5 and 9-11. ) Therefore they are interchangeable on the container. (Id.) |
| 5. The assembly of claim 4, | |

| | |
|---|---|
| wherein said first cover is adapted to blend ingredients within said container. | Exh. D, Figs. 2-7 show a blade unit which is a first cover configured to blend ingredients within the container. Exh. E, paragraphs 2-7 describe the operation of the first cover or blade unit. Exh. E, unnumbered page with caption entitled "Functions of the Cutter Blade" specifically describes using the blade unit for "mixing." |
| 6. The assembly of claim 5, | |
| wherein said first cover comprises an agitator. | To agitate means "to stir or mix up." Webster's New World Dictionary, Paperback Edition, Simon & Schuster, 1990.<br><br>A blade unit has blades thereon for mixing. Exh. D, Figs. 2-7 show a blade unit or first cover with mixing blades. Exh. E, paragraphs 2-7 describe the operation of the first cover or blade unit. Exh. E, unnumbered page with caption entitled "Functions of the Cutter Blade" specifically describes using the blade unit for "mixing." |
| 7. The assembly of claim 6, | |
| wherein said agitator comprises a blade. | To agitate means "to stir or mix up." Webster's New World Dictionary, Paperback Edition, Simon & Schuster, 1990.<br><br>A blade unit has blades thereon for mixing. Exh. D, Figs. 2-7 show a blade unit or first cover with mixing blades. Exh. E, paragraphs 2-7 describe the operation of the first cover or blade unit. Exh. E, page with caption entitled "Functions of the Cutter Blade" specifically describes using the blade unit for "mixing." |
| 8. The assembly of claim 4, | |

| | |
|---|---|
| wherein said first and second cover each comprises a screw thread for engaging said open top portion. | Exh. D, Figs. 1-11, and Exh. E, the Kiss Mixer Instruction Manual, show that the blade unit or first cover and cap or second cover each have an internal screw thread for engaging the external screw thread on the container. |

| | |
|---|---|
| 9. The assembly of claim 4, | |
| wherein said cap has a drinking hole formed therein. | The Yang Funnel Cap featured a drinking hole. (Exh. L at 45:3-6.)<br><br>Exh. D, Figs. 2-3, 9 and 11 show a cap. The cap has a threaded interface to mate with the blender container. Exh. E, unnumbered page labeled "Name of Parts" shows a cap and the unnumbered page having a section entitled "Constitution" shows caps placed on containers. It would have been obvious to a person of ordinary skill to add a hole to the cap of the Kiss Mixer to create the drinking cap having a drinking hole of claim 9. It would further have been obvious to add a threaded interface to the drinking caps of Sadlier, DeMars or Ito so that these caps would mate with the container of the Kiss Mixer. |

| | |
|---|---|
| 10. The assembly of claim 9, | |
| wherein said cap further comprises a closure member for selectively closing said drinking hole. | Exh. D, Figs. 2-3, 9 and 11 show a cap. The cap has a threaded interface to mate with the blender container. Exh. E, unnumbered page labeled "Name of Parts" shows a cap and the unnumbered page having a section entitled "Constitution" shows caps placed on containers. It would have been obvious to a person of ordinary skill to add a hole to the cap of the Kiss Mixer and to add a closure tab to create the drinking cap of claim 10. It would further have been obvious to add a threaded interface to the drinking caps of Sadlier, DeMars or Ito so that these caps would mate with the container of the Kiss Mixer. |

| | |
|---|---|
| 11. The assembly of claim 4, | |

| | |
|---|---|
| wherein said adapter portion comprises an agitator collar selectively mountable to a blender and to said beverage container. | Exh. D, Figs. 2, 5, and 6 show a blade unit which is an agitator collar having an adapter portion for selectively mounting the blade unit on a container. Exh. E, Fig. 8 shows the blade unit or agitator collar mounted on a blender. Exh. E, paragraphs 1-7 describe the process of selectively mounting the agitator collar on containers and on a blender. |

| | |
|---|---|
| 12. The assembly of claim 4, | |
| wherein said adapter portion comprises a first portion removably fixing said container to said adapter and | The blade unit of the Kiss Mixer (Exh. D hereto) includes a first adapter portion that allows for the unit to be removably attachable to a container. Exh. E, paragraphs 1-7 describe the use of the blade unit for this purpose. |
| a second portion removably mounting said first cover on a blender. | The blade unit of the Kiss Mixer (Exh. D hereto) also includes a second portion that allows for the unit to be removably mountable to a blender. Exh. E, paragraphs 1-7 describe the use of the blade unit for this purpose. |

46.     In the following paragraph are claim charts that apply the above-discussed prior art to each element of each claim of the '659 patent and therefore demonstrate the invalidity of each claim of that patent. As mentioned previously, in my opinion, the claims of the '659 patent, i.e. claims 1-12, are obvious in view of the Kiss Mixer and the Sadlier or Demars, or Ito or Wang drinking cap patents, or the funnel cap of the Kiss Mixer, or simply ordinary skill in the art.

| Application of the Kiss Mixer and Drinking Cap Prior Art to the Claims of the '659 Patent | |
|---|---|
| 1. A blender assembly comprising: | |
| a blender base; | Exh. D, Figs. 2 and 3 of the Kiss Mixer show a blender base. Exh. E, the Kiss Mixer Instruction Manual on the unnumbered page entitled Name of Parts, shows a blender base. |

| | |
|---|---|
| a collar removably mountable on said blender base and having a first interface; | Exh. D, Figs. 3 and 4 of the Kiss Mixer show a collar having a first interface or threaded upper portion.<br><br>Exh. E, the Kiss Mixer Instruction Manual on the unnumbered page entitled Name of Parts, shows a collar. Exh. E, para 2 describes the process of attaching the collar to a blender container. |
| a blender jar removably mountable to said collar and having a second interface configured to mate with said first interface; | Figs. 3 and 4 of the Kiss Mixer show a blender jar having a second interface (external thread) configured to mate with the first interface (i.e. internal thread) on the collar.<br><br>Exh. D, the Kiss Mixer Instruction Manual on the unnumbered page entitled Name of Parts, shows blender containers or jars. |
| a beverage container removably mountable to said collar and having a third interface configured to mate with said first interface; and | Figs. 3 and 4 of the Kiss Mixer show a beverage container having a third interface (external thread). Fig. 5 shows the beverage container mated to the first interface of the collar.<br><br>Exh. D, the Kiss Mixer Instruction Manual on the unnumbered page entitled Name of Parts, shows blender beverage containers or jars. |

| | |
|---|---|
| a drinking cap removably mountable to said beverage container and having a fourth interface configured to mate with said third interface | Exh. D, Figs. 2-3, 9 and 11 of the Kiss Mixer show a cap. The cap has a fourth interface (i.e. an internal thread) configured to mate with the third interface of the beverage container.<br><br>Exh. E, unnumbered page labeled "Name of Parts" shows a cap and the unnumbered page having a section entitled "Constitution" shows caps placed on blender containers.<br><br>The Sadlier, DeMars and Ito patents all show drinking caps. It would have been obvious to a person of ordinary skill in the art to add a threaded interface to the drinking cap of Sadlier, DeMars or Ito to produce the drinking cap of claim 1 of the '659 patent.<br><br>It would also have been obvious to a person of ordinary skill to add a hole to the cap of the Kiss Mixer to create the drinking cap having a drinking hole of claim 1 of the '659 patent.<br><br>The Yang Funnel Cap also featured a drinking hole. (Exh. L at 45:3-6.) |
| 2. The assembly of claim 1, wherein said collar further comprises an agitator. | Exh. D, Fig. 4 shows a collar with blender blades. Blender blades are agitators. |
| 3. The assembly of claim 1, wherein said first, second, third and fourth interfaces each comprises a screw thread. | The blender containers of the Kiss Mixer have external threads. (Exh. D, Figs. 4 and 10.) The collars or blade bases and caps for the blender containers have internal threads to mate with the blender containers. (Exh. D, Figs. 3-5.) Thus, each interface comprises a screw thread. |
| 4. The assembly of claim 1, wherein said third interface comprises a male thread. | The blender containers of the Kiss Mixer have external or male threads. (Exh. D, Figs. 4 and 10.) |

31

| | |
|---|---|
| 5. The assembly of claim 1, wherein said second interface comprises a male thread. | The blender containers of the Kiss Mixer have external or male threads. (Exh. D, Figs. 4 and 10.) |
| 6. The assembly of claim 1, wherein said blender jar comprises: | |
| a handle and | The blender container of the Kiss Mixer lacks a handle. However, cups and jars with handles are well known in the art. It would been obvious to a person of ordinary skill in the art to add a handle to blender jar of the Kiss Mixer to produce a jar with a handle if such was desired. |
| a spout. | This claim is invalid for lack of enablement, i.e. nowhere in the patents-in-suit is there either a figure or any written description that describes how a spout could be added to a container featuring a screw thread at its upper end. While the patents-in-suit do disclose blender containers having spouts (*see* Fig. 3 of Exhs. A and B), these containers do not use a threaded interface and the caps and blade bases are not interchangeable on the containers. (See Exhs. A and B, Fig. 2 of each.) Because the caps of collars are not interchangeable on the containers, they do not meet the interface requirements of claim 1. |
| 7. The assembly of claim 1, wherein said first interface comprises internal threads at an upper inside portion of said agitator collar. | The agitator collar or blade base of the Kiss Mixer has internal threads at is upper inside portion. (*See* Exh. D, Figs. 4.) |

| | |
|---|---|
| 8. The assembly of claim 1, wherein said drinking cap comprises a drinking hole and | The Ito and Wang drinking caps both feature drinking holes and threads for mating to a drinking container. (*See* Exhs. H and I.) It would have been obvious to scale these tops to fit blender container of the Kiss Mixer.<br><br>The Sadlier and DeMars drinking caps both feature drinking holes. (*See* Exhs. F and G.) It would have been obvious to add an internal thread to these caps to produce the drinking cap of the claims.<br><br>The Yang Funnel Cap featured a drinking hole. (Exh. L at 45:3-6.) |
| a closure tab to avoid spilling. | The DeMars, Ito and Wang drinking caps both feature drinking holes with closure tabs. (*See* Exhs. G, H and I.) It would have been obvious to add an internal thread to these caps to produce the drinking cap of the claims. |
| 9. The assembly of claim 1, wherein said collar comprises an outer sidewall and | The agitator collar of the Kiss Mixer has an outer side wall. (*See* Exh. D, Figs. 4.) |
| wherein said first interface is formed on an inner portion of said outer sidewall. | The agitator collar of the Kiss Mixer has an outer side wall with an inner portion featuring an internal thread or first interface. (*See* Exh. D, Fig. 4.) |
| 10. A method of blending, comprising: | |

| | |
|---|---|
| providing a blender assembly comprising a blender base having a motor, a collar having an agitator, a container, and a cap configured for mounting on and drinking from the container; | Exh. D, Figs. 2 and 3 of the Kiss Mixer show a blender base having a motor, collars having agitators, blender containers and container caps.<br><br>Exh. E, the Kiss Mixer Instruction Manual on the unnumbered page entitled Name of Parts, shows a blender base having a motor, collars having agitators, blender containers and caps.<br><br>The Sadlier, DeMars and Ito patents all show drinking caps. It would have been obvious to a person of ordinary skill in the art to add a threaded interface to the drinking caps of Sadlier, DeMars or Ito to produce the drinking cap of the claims of the '659 patent.<br><br>It would also have been obvious to a person of ordinary skill to add a hole to the cap of the Kiss Mixer to create the drinking cap having a drinking hole of the claims of the '659 patent. |
| placing ingredients in the container and closing the container with the collar; | Exh. D, Figs. 2 and 3 of the Kiss Mixer, show containers suitable for drinking and into which ingredients may be placed.<br><br>Exh. D, Figs. 3 and 4 of the Kiss Mixer show collars or blade bases next to drinking containers. Figure 5 shows a collar mounted to a drinking container.<br><br>Exh. E, para. 1 of the Kiss Mixer Instruction Manual, describes putting ingredients into the drinking vessel.<br><br>Exh. E, paragraph 2, describes the process of attaching a collar to a container. |

| | |
|---|---|
| inverting the container and collar and placing the container and collar on the motorized base; | Exh. D, Figs. 5 of the Kiss Mixer shows a collar mounted to a drinking container in an inverted position.<br><br>Exh. E, paragraph 3 describes the process of inverting the collar and drinking container. |
| blending the ingredients in the container with the motorized base; | Exh. D, Fig. 1 of the Kiss Mixer shows a collar and drinking container mounted to a blender unit.<br><br>Exh. E, paragraph 3 describes the process of attaching the inverted collar and drinking container to a blender base. Exh. E, paragraph 4 describes the process of operating the blender to mix ingredients. |
| removing the container and collar from the base; | Exh. E, paragraph 4 describes removing the collar and drinking container from the blender base. Furthermore, it is inherent that to access the blended contents in container, a user would have to remove the blade unit and container from the blender base. |
| positioning the container and collar in a generally upright position; | Exh. D, Fig. 4 of the Kiss Mixer shows the drinking container in an inverted condition.<br><br>Exh. E, paragraphs 1-4 describe putting ingredients into the drinking container and attaching a blade unit to the container and inverting the blade unit and container and attaching it to the blender base. It is inherent that to access the blended contents in the container, a user would have to re-invert the blade unit and container assembly prior to removing the blade unit from the open top of container. Otherwise, the blended contents of container would spill out upon removal of the blade unit from container. |
| removing the collar from the container; and | It is inherent that to access the blended materials in the container, one would have to remove the collar from the container. |

| | |
|---|---|
| placing the cap on the container so that the blended ingredients can be consumed by drinking through the cap. | The Ito and Wang drinking caps both feature drinking holes and threads for mating to a drinking container. (*See* Exhs. H and I.) It would have been obvious to scale these tops to fit blender container of the Kiss Mixer.<br><br>The Sadlier and DeMars drinking caps both feature drinking holes. (*See* Exhs. F and G.) It would have been obvious to add an internal thread to these caps to produce the drinking cap of the claims.<br><br>The Yang Funnel Cap featured a drinking hole. (Exh. L at 45:3-6.) |
| 11. The method of claim 10, wherein said blender assembly comprises a threaded interconnection between said container and said cap and | The blender containers of the Kiss Mixer have an external thread at their upper end which mates with their internally threaded caps. (*See* Exh. D, Fig. 4.) |
| wherein placing the cap on the container further comprises covering the threaded interconnection with the cap. | The blender containers of the Kiss Mixer have an external thread at their upper end which mates with their internally threaded caps. (*See* Exh. D, figure 4.) When a cap is screwed onto the threaded interface, the interface is covered by the cap. |
| 12. The method of claim 10, further comprising drinking the ingredients through the cap. | It is inherent that to drink the ingredients from the container with the drinking cap in place, a user must drink them through the drinking hole in the cap because there is now other way to drink them without removing the cap. |

## Description of the Mini-Blend Containers and Instructions

47.     Attached hereto as Exhibit C are 16 photographs of two versions of the Mini-Blend container and the accompanying instructions which are printed on the containers' packaging or enclosed with the containers. The photographs are identified as Figures 1 through 16. Figures 1-9 are of the containers' instructions. Figures 10-11 show the 8-ounce version of the container. Figures 14-15 show the 30-ounce version of the container. Figure 12 is a Mini-Blend container lid. Figure 13 is an Oster blade base as used with the Mini-Blend container. I would note that the 8-ounce and 30-ounce versions of the Mini-Blend container differ only in size and shape and in that the 8-ounce version includes a handle. (*See* Exhibit C, Figs. 10 and 14.) Unless specifically noted below, the features of both containers that are relevant to this analysis are the same. Instructions for the 8-ounce and 30-ounce versions of the container are shown below:

///

///

///

# Instructions for the 8 Ounce Container



/// 

///

///

# ASSEMBLING

**CAUTION:** Follow all these important steps to assemble, tighten, and mount "Mini-Blend" container quickly and correctly. Injury can result if moving blades are accidentally exposed.



**ASSEMBLY: 1.** Turn container so the opening is at the top **2.** Place sealing ring on container opening. **3.** Turn agitator blades upside down and place in mouth of container **4.** Thread container bottom to container. Engage threads properly. Screw on firmly.





# "MINI-BLEND" CONTAINER USES

**8-OUNCE "MINI-BLEND" CONTAINER**

**Blend:**
Salad Dressings
Sauces
Toppings
Marinades

**Grind:**
Coffee Beans
Whole Grains
Citrus Rind
Pepper Corns
Poppy Seed

**Chop:**
Parsley
Nutmeats
Onion
Hard-cooked eggs

**Puree:**
Cooked Fruits,
Vegetables
and Meats for Baby
Food and Special Diets

**30-OUNCE "MINI-BLEND" CONTAINER\***

**Blend:**
Health Drinks
Ice Cream Drinks
Diet Drinks
Alcoholic Drinks
Pancakes
Salad Dressings
Sauces
Toppings
Marinades

**Reconstitute:**
Frozen Fruit Juices
Dry Milk

**Grind:**
Coffee Beans
Whole Grains

*Oster*
Advanced Aluminum Corporation
An Allegheny International Company

203665 REV. J          ®OSTER, MINI-BLEND          ©OSTER 1981          *U.S. Patent D242,302          LITHO IN U.S.A.



*Oster*

**MINI-BLEND®**
CONTAINER INSTRUCTIONS

48.     Certain Oster literature and packaging refer to the 30-ounce version of the Mini-Blend container as the Blend-n-Store. Exhibit C, Figure 16 shows the Blend-n-Store packaging. Attached as Exhibits Q and R hereto are true and correct copies of 1992 and 1994 Oster blender instruction manuals that also refer to the 30-ounce version of the Mini-Blend container as the Blend-n-Store. As stated above, the features of the both the 8-ounce and 30-ounce versions of the Mini-Blend container that are relevant to this analysis are the same.

49.     The Mini-Blend Instructions (*see* Exh. C, Figs. 1-9) disclose a blender base, a blender container, a cap for the container and a blade base for interfacing the Mini-Bend container with the blender base. (*See* Exh. C, Figs. 1-2 and 5-6.)

50.     The Mini-Blend containers (both the 8 and 30 ounce versions) have a closed bottom end, an open top end, and include an external thread at the top of the containers which allows the containers to interface with the blade base and the containers' caps. (*See* Exh. C, Figs. 1-2, 5-6, 10-11 and 14-15.)

51.     The blade base and cap for use on the 8-ounce and 30-ounce containers both feature internal threads that mate with the external thread of the containers and therefore are adapted to be removably mountable on and off the containers. (*See* Exh. C, Figs. 12-13.) The blade base is also adapted to be removably mountable on and off a blender. (*See* Exh. C, Figs. 1-9 and 13.)

52.     The instructions for the 30-ounce version of the Mini-Blend container (also sold as the Blend-N-Store) bear a copyright date of 1981. (*See* Exh. C, Fig. 9). Therefore, the 30-ounce container is prior art to the patents-in-suit. The instructions also indicate that the 30-ounce version of the container is covered by U.S. Patent No. D242,302 ("the '302 patent"). (A true and correct copy of the '302 patent is attached hereto as Exh. "P".) The '302 patent was filed on July 11, 1975 and issued on November 16, 1976. (*See* Exh. "P" hereto.) Therefore, the '302 patent is also prior art to patents-in-suit.

53.     The 1981 instructions for the 30-ounce Mini-Blend container (also sold as the Blend-N-Store) state that some of the "uses" of the 30 ounce container include blending "Health Drinks, Ice Cream Drinks, Diet Drinks, and Alcoholic Drinks. (*See* Exhibit C, Fig. 9.)

54.     The Instructions for the 8-ounce Mini-Blend container bear a copyright date of 1982. (*See* Exh. C, Fig. 2.) Therefore, these instructions are also prior art to the patents-in-suit. *See also* Exh. J hereto which is a true and correct copy of a Sunbeam/Oster advertising flyer distributed at the 1974 International Housewares Show. The flyer shows a photograph of an 8-ounce Mini-Blend container attached to a blade base and inverted on an Oster blender.

55.     The blade base for use with both versions of the Mini-Blend container incorporates blender blades and is equipped with a lower portion configured to removably mate with the blender base and an upper portion having a internal screw thread for removably mating with (i.e. screwing onto) a Mini-Blend container. (*See* Exh. C, Figs. 1-9 and 13.) This arrangement is identical to that shown by Figure 19 of the patents-in-suit.

56.     The cap for use with both versions of the Mini-Blend container likewise has an internal screw thread which mates with the external thread of the container.  (*See* Exh. C, Figs. 1-9, 10-12 and 14-15.)  The internal screw thread on the blade base and the cap are the same.  (*See* Exh. C, Figs. 1-2, 5-6 and 9.)  Therefore, the blade base and cap are interchangeably removable on the Mini-Blend container.  This arrangement is identical to that shown by Figure 19 of the patents-in-suit.


**Invalidity of the Patents-in-Suit In View of the Mini-Blend Containers**

57.     Claims 1-2 and 9-10 of the '592 patent and claims 1-9 of the '659 patent, are apparatus claims.  Each claim, using slightly different terminology, recites the combination of a blender base, a drinking container or blender jar, a blade base, and a drinking cap.  The blender jar, blade base, and drinking cap each include an interface.  The interface disclosed in the specification and figure 19 of the patents is a screw thread.  (*See* Exhs. A and B, Fig. 19 of both.) More specifically, the blender jar features an external screw thread as the interface, while the blade base and the drinking cap each feature an internal screw thread, which mates with the external thread on the blender jar, as the interface.  (*See* Exhs. A and B, Fig. 19 of both.)


58.     Like the patents-in-suit, the Mini-Blend container instructions disclose a blender base, a blender container which features an external thread or interface at its upper end; and a blade base which features an internal thread or interface for mating with the container.  (*See* Exh. C, Figs. 1-2, 5-6, 9-12, 13, and 14-15.)


59.     The only element of claim 1 of either the '592 or '659 patent that is missing from

the Mini-Blend instructions is a drinking cap. Although the Instructions do not disclose a drinking cap, they do disclose a cap for sealing the contents of the container. (Exh. C, Figs. 1-2, 5-6, and 8-12 and 14-15.) This cap, like the drinking cap of the claims includes an interface in the form of an internal thread. (Exh. C, Fig. 12.) The only element missing from the cap of the instructions is a drinking hole.

60.     Claim 3 of the '592 patent and claims 10-12 of the '659 patent are method claims. These claims recite nothing more than the steps for using the blender base, blender jar, blade base, and drinking cap recited in the independent apparatus claims. These claims recite the following steps: placing ingredients in a blender container, attaching the blade base to the blender container, inverting the container and blade base and putting them on the blender base, blending the ingredients, removing the blender container and blade base from the blender base, removing the blade base from the blender container and attaching a drinking cap to the blender container. (Exh. A, claim 3; Exh. B, claims 10-12.)

61.     The Instructions disclose the above steps either directly or inherently. The picture at the top of the instructions and several figures in the packaging show a Mini-Blend container filled with ingredients and inverted on a blender base. (Exh. C, Figs. 1-7.) Moreover, the Instructions specifically describe the steps of attaching the blade base to the container and putting the container and blade base on the blender base for blending. (Exh. C, Figs. 1-2, 5-6 and 9.) It is inherent in the Instructions that to access the contents of the container after blending, a user must first remove the container from the blade base. It is also inherent that the container must be re-inverted, i.e. placed in an upright position, in order to remove the blade base and thus gain

access to the blended contents. The only step missing from the instructions is the step of attaching a drinking cap to the container, and because these steps have been part of the blending process for decades, the attachment of a drinking cap instead of a container cap to the blending container is an insignificant modification.

62.     The drinking caps of the Sadlier, Demars, Ito, and Wang patents were but a few of the drinking caps available prior to the priority date of the patents-in-suit. Each of these caps served but one purpose and that was to close off a cup leaving only a hole through which a person could drink. In my opinion, a person of ordinary skill in the art being surrounded by these drinking caps would have readily understood that a drinking cap could be added to the Mini-Blend container by simply adding a drinking hole the existing cap for the container.

63.     Alternatively, in my opinion, it would have been a routine application of engineering skill to scale the drinking cap of Ito or Wang up or down as needed to fit on a Mini-Blend container. The Wang and Ito drinking caps taught the use a threaded interface to attach a drinking cap to a drinking container. (*See* paragraphs 37 and 38 *supra*.) Like the Wang and Ito caps, the Mini-Blend containers also used a threaded interface to attach their flat caps to the containers. (Exh. C, Figs. 9-10.) All a person of ordinary skill in the art would have had to do to fit either the Ito or Wang drinking caps to the Mini-Blend containers was make the Wang or Ito screw threads match that of the container.

64.     In my opinion, it would have further been obvious to add a screw thread to the drinking caps of Sadlier or Demars to adapt them as well to the Mini-Blend containers. To the

best of my knowledge a person of ordinary skill would have been taught the use of screw threads as part of his engineering curriculum and if not, certainly would have encountered the use of screw threads as part of his several years of work experience. Thus, a person of ordinary skill in the art would have readily understood that to mate the drinking caps of Sadlier or Demars to the Mini-Blend container, all that needed to be done was add a mating screw thread to the caps. If a closure tab was desired to seal off the drinking hole when the drinking container was not in use, a person of ordinary skill had only to look to the Demars, Ito, or Wang drinking caps for examples of various closure tab configurations. Each of the above-mentioned modifications is routine and trivial and each would have readily achieved the inventor's goal of adding a drinking cap to a blender container.

65.     The following claim chart demonstrates that claims 4-8 and 10-12 of the '592 patent are anticipated by the Mini-Blend container instructions. The chart also demonstrates that claims 1-3 and 9-10 of the '592 patent are obvious over the Mini-Blend container instructions and the drinking cap prior art. The 30-ounce container (also known as the Blend-n-Store container) is depicted where illustrative figures are used in the charts. However, as mentioned previously, the features of both the 8-ounce and 30-ounce containers, as regards this analysis, are the same and specific reference to the figures of both containers are included in the charts.

///

///

///

| Application of the Mini-Blend Instructions and the Drinking Cap Prior Art to the Claims of the '592 Patent—30 Ounce or Blend-n-Store Container Depicted | |
|---|---|
| 1. A container assembly for use with a blender blade base, comprising: | |
| a drinking container having a first interface at its top; | <br><br>Opening of 30-Ounce Container<br><br>The Mini-Blend Instructions show a Mini-Blend container which is a drinking container featuring an external thread or first interface at its top. (Exh. C, Figs. 1-2, 5-6, 9, 11 and 15.) |
| a blade base removably mountable on and off a blender and having a blade unit thereon and a second interface thereon, the second interface configured to mate with the first interface, the blade base and the drinking container forming a sealed container; and | <br>The Mini-Blend Instructions depict a blade base that is removably mountable on an off a blender. (Exh. C, Figs. 1-2, 5-6, 9 and 13.) The blade base includes a blade unit and features in internal thread or second interface for mating with the external thread or first interface of the Mini-Blend container. (Exh. C, Fig. 13.) Combined the blade base and Mini-Blend container form a sealed container. |

| | |
|---|---|
| a drinking cap having a drinking hole and a third interface, the third interface configured to mate with the first interface. |  **30-ounce Container:** (Also sold as the Blend-n-Store) The flat cap of the Mini-Blend container is a cap having a third interface (an internal thread) configured to mate with the first interface (i.e. external thread of the blender container). (Exh. C, Figs. 10-12 and 14-15.) It would have been obvious to a person of ordinary skill to add a hole to the cap of the Mini-Blend container to create the drinking cap having a drinking hole of claim 1 of the '592 patent. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |

| | |
|---|---|
| 2. The container of claim 1, | |
| wherein the drinking container comprises a closed bottom that is opposite the top. | A Mini-Blend container is a drinking container that has a closed bottom that is opposite the top. (Exh. C, 10-11 and 14-15.) |
| | |
| 3. A method of mixing ingredients in a drinking container, comprising: | |
| placing ingredients in a drinking container; | A Mini-Blend container is a container suitable for drinking into which ingredients may be placed. (Exh. C, 10-11 and 14-15.) |
| attaching a blade base to the drinking container; | Exhibits C, Figs. 1-2 and 5-6 and 9 show a blade base being attached to the threaded upper end of a Mini-Blend container. |

| | |
|---|---|
| inverting the blade base and drinking container; | Exhibit C, Figs. 1-5 and 7, and Exh. J show the Mini-Blend container inverted on a blender. |
| attaching the blade base to a motorized blender base and operating the blender base to mix the ingredients in the drinking container; | Exhibit C, Figs. 1-5 and 7 and Exh. J show the Mini-Blend container inverted on a blender, i.e. the blade base is attached to the blender base. It is inherent that the blender base must be operated to blend the ingredients. |
| removing the blade base and drinking container from the blender base; | To access the blended contents of the Mini-Blend container, a user would have to first remove the container from the blender. Thus, this step is inherent in Exhibit C. |
| inverting the blade base and drinking container; | To attach the blade base and Mini-Blend container to a blender base the blade base/Mini-Blend container must be inverted. (See Exh. C, Figs. 1-2, 5-6 and 7; see also Exh. J.) To remove the blade base/ Mini-Blend container combination it must again be inverted. Hence, the step of inversion is inherent in the disclosure of Exhibit C. |
| removing the blade base from the drinking container; and | It is inherent that to access the blended materials in the Mini-Blend container, a user would first have to remove the blade base from the container. |
| attaching a drinking cap to the top of the drinking container. | It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap having a drinking hole of claim 1 of the '592 patent. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |
| | |
| 4. A beverage container assembly for use with a blender, comprising: | |

| | |
|---|---|
| a beverage container having an open top portion and a closed bottom portion; |  |
| | The Mini-Blend container is beverage container having an open top end and a closed bottom portion. (Exh. C, Figs. 10-11 and 14-15.) |
| a first removable cover for selectively covering said top portion of said container, said first cover adapted to be removably mountable on and off a blender and comprising an adapter portion for mounting said container on a blender; |  |
| | The blade base of the Mini-Blend Instructions is a first cover adapted to selectively cover the top portion of the container and is also adapted to be removably mountable on and off a blender. (Exh. C, Fig. 13; *see also* Figs. 1-2, 5-6 and 9.) The lower portion of the blade base is configured to removably attach to the product's blender base and the upper portion of the blade base includes an internal thread which allows the blade base to screw onto the Mini-blend container. (Exh. C, Fig. 13; *see also* Figs. 1-2 and 5-6.) |
| and a second removable cover for selectively covering said open top portion of said container, said second cover comprising a cap, and |  Per the Court's claim construction order, a second cover is "a cap that may be screwed onto the beverage container by the user and covers some or all of the open top portion. (*See* Thuma Decl., Exh. N, i.e. Claim Construction Order.) The flat or sealing cap of the Mini-Blend container meets this limitation of the claims and is therefore a second cover. (Exh. C, Fig. 12.) |

| | |
|---|---|
| wherein said first and second covers are interchangeable on said container. |  The blade base or first cover and the cap or second cover both screw onto the Mini-blend container. (Exh. C, Figs. 1-2, 5-6 and 13.) Therefore they are interchangeable on the container. |
| | |
| 5.  The assembly of claim 4, | |
| wherein said first cover is adapted to blend ingredients within said container. | The blade base is adapted to blend ingredients within the Mini-Blend container. (Exh. C, Figs. 1-2, 5-6, 9 and 13.) |
| | |
| 6.  The assembly of claim 5, | |
| wherein said first cover comprises an agitator. | To agitate means "to stir or mix up."  Webster's New World Dictionary, Paperback Edition, Simon & Schuster, 1990.  Exhibit C, Figs 1-2, 5-6 and 12 show blender blades. Blender blades are agitators. |
| | |
| 7.  The assembly of claim 6, | |
| wherein said agitator comprises a blade. | To agitate means "to stir or mix up."  Webster's New World Dictionary, Paperback Edition, Simon & Schuster, 1990.  Exhibit C, Figs 1-2, 5-6, 9 and 13 show blender blades. |
| | |
| 8.  The assembly of claim 4, | |

| | |
|---|---|
| wherein said first and second cover each comprises a screw thread for engaging said open top portion. | The Mini-Blend container has an external screw thread. (Exh. C, Fig3. 11 and 15.) The cap (second cover) and blade base (first cover) both have mating internal threads. (Exh. C, Figs. 12 and 13.) |
| | |
| 9. The assembly of claim 4, | |
| | |
| wherein said cap has a drinking hole formed therein. | The Mini-Blend container cap is a cap for selectively covering the top portion of the Mini-Blend container. (Exh. C, Figs. 1-2, 5-6, 9, 10-11 and 14-15.) It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap having a drinking hole of claim 1 of the '592 patent. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |
| | |
| 10. The assembly of claim 9, | |
| | |
| wherein said cap further comprises a closure member for selectively closing said drinking hole. | The Mini-Blend container cap is a cap for selectively covering the top portion of the Mini-Blend container. It would have been obvious to a person of ordinary skill to add a hole to a cap of the Mini-Blend container to create a drinking cap having a drinking hole. It would also have been obvious to add a closure tab to the cap. DeMars and Ito disclose drinking caps with closure tabs. It would have been equally obvious to add an internal screw thread to these caps so that they could mate with external thread of the Mini-Blend container. |
| | |
| 11. The assembly of claim 4, | |
| | |
| wherein said adapter portion comprises an agitator collar selectively mountable to a blender and to said beverage container. | Exh. C, Figs. 1-2, 5-6, 9 and 13 show an agitator collar or blade base selectively mountable to a blender and to a Mini-Blend container. |
| | |
| 12. The assembly of claim 4, | |

51

| | |
|---|---|
| wherein said adapter portion comprises a first portion removably fixing said container to said adapter and | The agitator collar or blade base of the Mini-Blend instructions has a first portion removably fixing the Mini-Blend container to the collar, i.e. the blade base or collar has in internal thread which mates with the external thread on the blender container. (*See* Exh. C, Figs. 1-2, 5-6, 9 and 13.) |
| a second portion removably mounting said first cover on a blender. | The agitator collar or blade base has a second portion for removably attaching the collar to the blender base. Paragraph 4 of the Mini-Blend container instructions describes placing the container on a blender and operating the blender. (*See* Exh. C, Figs. 2 and 6.) For the blender to blend ingredients within the blender container, the blade base must be operatively coupled to the blender base. Thus, the element of the claims, if not expressly disclosed is certainly inherently disclosed. |

66.    The following claim chart demonstrates that claims 1-12 of the '659 patent are obvious over the Mini-Blend container instructions and the drinking cap prior art.

| Application of the Mini-Blend Instructions and the Drinking Cap Prior Art to the Claims of the '659 Patent | |
|---|---|
| 1.  A blender assembly comprising: | |
| a blender base; | Exhibit C shows a blender base. |
| a collar removably mountable on said blender base and having a first interface; | Exhibit C, Figs. 1-2 and 5-6 and 9 show the collar or blade base being attached to the threaded upper end of a Mini-Blend container.  The collar has an internal thread or first interface which mates with the external thread or second interface of the Mini-Blend container. (*See* Exh. C, Figs. 1-2, 5-6, 9 and 13.) |
| a blender jar removably mountable to said collar and having a second interface configured to mate with said first interface; | The Mini-Blend container is a blender jar removably mountable to the collar and having an external thread (second interface) configured to mate with the internal thread (first interface) of the collar. (*See* Exh. C, Figs. 1-2, 5-6, and 9.) |

| | |
|---|---|
| a beverage container removably mountable to said collar and having a third interface configured to mate with said first interface; and | Two Mini-Blend containers are shown in Exhibit J. A Mini-Blend container can be either a blender jar or a beverage container. The Mini-Blend container is removably mountable to the collar via an external thread on the container which mates with an internal thread on the collar. (*See* Exh. C, Figs. 1-2, 5-6, 9, 11, 13 and 15.) Thus, a second Mini-Blend container would be a container having an external thread (third interface) configured to mate with the internal thread (first interface) of the collar. |
| a drinking cap removably mountable to said beverage container and having a fourth interface configured to mate with said third interface. | The Mini-Blend container includes a cap which threads onto the container. It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap of the claims. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |
| | |
| 2. The assembly of claim 1, wherein said collar further comprises an agitator. | The collar disclosed by the Mini-Blend container instructions includes blender blades. (*See* Exh. C, Figs. 1-2, 5-6, 9 and 13.) Blender blades are agitators. |
| | |
| 3. The assembly of claim 1, wherein said first, second, third and fourth interfaces each comprises a screw thread. | The collar (i.e. blade base), blender jar, and caps disclosed by the Mini-Blend instructions all feature screw threads as interfaces. (*See* Exh. C, Figs. 1-2, 5-6, 9, 10-11, 12-13, 14-15.) |
| | |
| 4. The assembly of claim 1, wherein said third interface comprises a male thread. | The Mini-Blend container features a male screw thread. (*See* Exh. C, Figs. 10-11 and 14-15.) |
| | |
| 5. The assembly of claim 1, wherein said second interface comprises a male thread. | The Mini-Blend container features a male screw thread. (*See* Exh. C, Figs. 10-11 and 14-15.) |
| | |

| | |
|---|---|
| 6. The assembly of claim 1, wherein said blender jar comprises: | |
| a handle and | The Mini-Blend container features a handle. (See Exh. C, Fig. 10.) |
| a spout. | This claim is invalid for lack of enablement, i.e. nowhere in the patents-in-suit is there either a figure or any written description that describes how a spout could be added to a container featuring a screw thread at is upper end. While the patents-in-suit do disclose blender containers having spouts (*see* Fig. 3 of Exhs. A and B), these containers do not use a threaded interface and the caps and blade bases are not interchangeable on the containers. (See Exhs. A and B, Fig. 2 of each.) Because the caps of collars are not interchangeable on the containers, they do not meet the interface requirements of claim 1. |
| 7. The assembly of claim 1, wherein said first interface comprises internal threads at an upper inside portion of said agitator collar. | The agitator collar has internal threads at an upper inside portion of the collar. (*See* Exh. C, Fig. 13.) |
| 8. The assembly of claim 1, wherein said drinking cap comprises a drinking hole and | The Mini-Blend container includes a cap which threads onto the container. (Exh. C, Figs. 110-12 and 14-15.) It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap of the claims. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |

| | |
|---|---|
| a closure tab to avoid spilling. | A person of ordinary skill would have had at least the Demars, Ito and Wang drinking cap patents, all of which had closure tabs to avoid spilling, to use as examples of how to add a closure tab to a drinking cap. In view of these patents, it would have required nothing more than routine skill to add a drinking hole and closure tab to the cap of the Mini-Blend container or to adapt one of the Demars, Ito or Wang drinking caps to fit the Mini-Blend container. The Ito and Wang drinking caps already featured a screw thread interface with a beverage container and would only have needed to be sized to fit the Mini-Blend container. |
| | |
| 9. The assembly of claim 1, wherein said collar comprises an outer sidewall and | The collar disclosed in the Mini-Blend instructions has an outer sidewall. (*See* Exh. C, Figs. 1-2, 5-6, 9 and 13.) |
| wherein said first interface is formed on an inner portion of said outer sidewall. | The collar disclosed in the Mini-Blend instructions has a screw thread or first interface formed on an inner portion of the outer side wall. (*See* Exh. C, Figs. 1-2, 5-6, 9 and 13.) |
| | |
| 10. A method of blending, comprising: providing a blender assembly comprising a blender base having a motor, a collar having an agitator, a container, and a cap configured for mounting on and drinking from the container; | Exhibit C (*see* Figs. 1-2 and 5-6) discloses a blender base with a motor, a collar having an agitator, the Mini-Blend container and the cap for the Mini-Blend container. It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap of the claims. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |

| placing ingredients in the container and closing the container with the collar; | A Mini-Blend container is a container suitable for drinking into which ingredients may be placed. (*See* Exh. C, Fig. 10; see also Fig. 14 which is a picture of a larger capacity (30 ounce) version of the Mini-Blend container.) The container may be closed off by the collar. (*See* Exh. C, Figs. 1-2 and 5-6 and 9.) |
|---|---|
| inverting the container and collar and placing the container and collar on the motorized base; | Exh. C, Figs. 1-2 and 5-6 and 9show a blade base being attached to the threaded upper end of a Mini-Blend container. Exh. C, Figs. 1-5 and 7 show the Mini-Blend container inverted on a blender. Exh. J also shows a Mini-Blend container inverted on a blender. |
| blending the ingredients in the container with the motorized base; | Exh. C, Figs. 1-5 and 7 show the Mini-Blend container inverted on a blender. Exh. J also shows a Mini-Blend container inverted on a blender. It is inherent that the blender must be operated to blend the ingredients. |
| removing the container and collar from the base; | To access the blended contents of the Mini-Blend container, a user would have to first remove the container from the blender. Thus, this step is inherent in the Mini-Blend instructions. (*See* Exh. C, Figs. 1-5 and 7.) |
| positioning the container and collar in a generally upright position; | To remove the collar form the Mini-Blend container combination it must be inverted and placed in an upright position in order to access the contents of the container. Otherwise, the contents of the container would spill out upon removal of the collar. Thus, this step is inherent in the Mini-Blend instructions. |
| removing the collar from the container; and | It is inherent that to access the blended materials in the Mini-Blend container, a user would first have to first remove the collar from the container. |

| | |
|---|---|
| placing the cap on the container so that the blended ingredients can be consumed by drinking through the cap. | The Mini-Blend container includes a cap. (*See* Exh. C, Figs. 10, 12 and 15.) The cap of the Mini-Blend container has a threaded interface to mate with the threaded interface of the container. (*See* Exh. C, Fig. 12.) It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap of the claims. It would further have been obvious to scale the drinking caps of either Ito or Wang which used threaded interfaces to fit the Mini-Blend container. It would have been equally obvious to add a threaded interface to the drinking caps of Sadlier or DeMars to mate those caps with the Mini-Blend container. |
| | |
| 11. The method of claim 10, wherein said blender assembly comprises a threaded interconnection between said container and said cap and | The Mini-Blend container has an external thread at its upper end which mates with an internally threaded cap. (*See* Exh. C, Figs. 10-11, 12 and 14-15.) When a cap is screwed onto the threaded interface, the interface is covered by the cap. |
| wherein placing the cap on the container further comprises covering the threaded interconnection with the cap. | The Mini-Blend container has an external thread at its upper end which mates with an internally threaded cap. When a cap is screwed onto the threaded interface, the interface is covered by the cap. (*See* Exh. C, Figs. 10-11, 12 and 14-15.) |
| | |
| 12. The method of claim 10, further comprising drinking the ingredients through the cap. | The Mini-Blend container includes a cap. (*See* Exh. C, Figs. 10-11, 12 and 14-15.) It would have been obvious to a person of ordinary skill in the art to add a hole to the cap of the Mini-Blend container to create the drinking cap of the claims. Sadlier, DeMars, Ito and Wang are drinking caps. It would have been obvious to one of ordinary skill in the art to add an internal thread to these caps so that they would mate with external thread of the Mini-Blend container. It would have been equally obvious to add a hole to the cap of the Mini-Blend container for the purpose of drinking. |

67.     The comparison of the references cited herein to claims 1-3 and 9-10 of the '592 patent and claims 1-12 of the '659 patent is an illustration of the teaching that "(w)hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." <u>KSR International v. Teleflex Inc.,</u> 550 U.S. 398, 417 (2007).  Because the elements of the references submitted herein are used in their known, predictable ways to achieve predictable results that are not out of the ordinary for the particular elements in the submitted references, there is no reason why a person of ordinary skill in the art would have anything but a reasonable expectation of success in combining the devices disclosed in the references cited herein.  Adding a hole to a cap cannot be novel nor nonobvious.

68.     While it may not be strictly necessary under <u>KSR</u>, I also understand the legal test for obviousness often requires some reason or reasons for combining references to show the obviousness of the claimed invention.  From a product development and market forces standpoint, there are a number of reasons why a person of ordinary skill in the art would adapt the drinking caps of Wang or Ito, or Sadlier or Demars, to a blender/beverage container such as the Kiss Mixer, the Mini-Blend Container, or the Blend 'N Store container.

69.     First, I understand that certain documents produced by Sunbeam in this case noted the demand for smoothies that existed around the time the parent application for the '592 and '659 patents was filed in 2001.  These documents include documents SB1838-1920 and SB11242-11293.  As is well-known, smoothies are blended drinks typically to promote health

that became very popular in the 1990's. Aside from the Sunbeam documents referenced above, the popularity of smoothies is documented in an article entitled "The History of Smoothies" by Dan Titus from 2000 that was excerpted from his book Smoothies! The Original Smoothie Book: Recipes from the Pros. A true and correct copy of this article is attached hereto as Exhibit "S." Because smoothies became very popular in the 1990's, it is reasonable to infer that people desired to make their own smoothies at home, perhaps for consumption as they travel to work or elsewhere, such that adding a drinking cap to e.g., the Kiss Mixer or Mini-Blend/Blend 'N Store container would have been desirable.

70.     Second, I also know from personal observation and experience that the pace of life in the United States has increased substantially in the past 10-20 years such that people are consuming food and drink "on the go" much more often. Corroboration for my observation and experience can be found in the article "Causes and Consequences of Fast Food Sales Growth" by Mark D. Jekanowski published in Food Review in January-April 1999. A true and correct copy of this article is attached hereto as Exhibit T

71.     Third, in conjunction with the popularity of smoothies and the increase in food consumption "on the go," a desire for portable containers to consume beverages in automobiles also existed at the time of the filing of the parent application for the '592 and '659 Patents. People have for some time enjoyed travel mugs for coffee or soda. With the popularity of smoothies, which is to some degree a food supplement, a system in which a portable container could be used in conjunction with the preparation of smoothies would have been a desirable thing, and adapting existing blender systems such as the Kiss Mixer and Mini-Blend/Blend 'N

Store containers to allow for the preparation of smoothies, and their consumption "on the go" would have been a straightforward and desirable development.

72. Finally, with respect to the '659 patent in particular, most of the claims therein require a blender jar in addition to the beverage container. Adapting a travel mug to a blender system would have been a straightforward matter, and would have been desirable to promote versatility in one's blender system.

73. The foregoing demonstrates that market forces, including the desire for portability and versatility in one's blender system were in place before or at the time of the filing of the parent application for the '592 and '659 patents such that a person of ordinary skill in the art would have had reason to combine the Kiss Mixer or Mini-Blend/Blend 'N Store systems with the drinking caps of Sadlier, Demars, Ito, or Wang to arrive at the inventions claimed in the '592 and '659 patents.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 29 2010 at La Grange, Ilinois.

Michael M. Thuma